## HOSKO v. HOSKO

### Opinion of the Court

1. Torts—Husband and Wife—Marriage—Death.

A tort action may be maintained predicated upon injuries to one spouse arising out of an allegedly wrongful act of the marital partner during marriage, when the allegedly wrongful act resulted in termination of the marriage by death.

2. Torts—Antenuptial—Husband and Wife—Marriage.

An action commenced before marriage of the parties may be maintained by one spouse against the other for an antenuptial tort.

3. Negligence—Husband and Wife—Interspousal Immunity—Automobiles—Mental Incompetent.

Interspousal tort immunity bars an action for gross negligence by a wife who was injured in an automobile accident while a passenger in a car driven by her husband, suffered brain damage, and was subsequently declared a mental incompetent.

4. Torts—Husband and Wife—Interspousal Actions—Public Policy.

Interspousal tort actions contravene the public policy of this state.

5. Torts—Husband and Wife—Interspousal Immunity—Exceptions—Common Law.

The common-law doctrine of interspousal tort immunity has two limited exceptions: (1) where the tort is antenuptial action may be maintained, (2) where the tort results in the termination of the marriage by death action may be maintained.

---

References for Points in Headnotes
[1–7, 9–13] 41 Am Jur 2d, Husband and Wife § 522 et seq.
[8] 20 Am Jur 2d, Courts § 201.

6. TORTS—INTERSPOUSAL IMMUNITY—COMMON LAW.

The doctrine of interspousal tort immunity is a creation of the common law and has never been codified in this state.

7. TORTS—INTERSPOUSAL IMMUNITY—EXCEPTION—COURTS.

The Court of Appeals has no right to create an additional exception to the plain and long-established rule of interspousal tort immunity.

8. COURTS—COURT OF APPEALS—PRECEDENT.

An intermediate appellate court has a duty to adhere to established precedent.

9. TORTS—INTERSPOUSAL IMMUNITY—EXCEPTIONS—COURTS.

The creation of an additional exception to the general rule of interspousal tort immunity must be by decision of the Supreme Court.

DISSENTING OPINION

LESINSKI, C. J.

10. TORTS—HUSBAND AND WIFE—INTERSPOUSAL IMMUNITY.

*The doctrine of interspousal tort immunity is no longer a* per se *rule, but each case should be examined by the courts to determine the applicability of the reasons behind the doctrine.*

11. TORTS—HUSBAND AND WIFE—INTERSPOUSAL ACTIONS—FIRST IMPRESSION.

*Interspousal tort actions are to be treated as cases of first impression and the doctrine of interspousal tort immunity is to be enforced only in those cases where the reasons for the rule apply.*

12. TORTS—HUSBAND AND WIFE—INTERSPOUSAL IMMUNITY—MENTAL INCOMPETENCY.

*Mental incompetency of a spouse has the same effect as termination of the marriage by death, when considering the reasons behind the doctrine of interspousal tort immunity in determining whether it should be applied to a particular case.*

13. TORTS—HUSBAND AND WIFE—MENTAL INCOMPETENCY—INTERSPOUSAL IMMUNITY—PUBLIC POLICY.

*Mental incompetency of a wife caused by her husband's allegedly wrongful actions appears to have completely disrupted the sacred relation of man and wife so that an action by the wife against her husband should not be barred by public policy.*

Appeal from Wayne, George E. Bowles, J. Submitted Division 1 October 15, 1969, at Detroit. (Docket No. 6,193.) Decided December 4, 1969. Leave to appeal granted July 16, 1970. See 383 Mich 804.

Complaint by Alice Hosko, as guardian for Eleanor Hosko, a mental incompetent, against Steve Hosko for injuries resulting from an automobile collision. Motion by defendant for summary or accelerated judgment denied. Defendant appeals. Reversed.

*Goodman, Eden, Robb, Millender, Goodman & Bedrosian,* for plaintiff.

*Garan, Lucow & Miller* (*David J. Cooper,* of counsel), for defendant.

Before: LESINSKI, C. J., and J. H. GILLIS and DANHOF, JJ.

J. H. GILLIS, J. On July 6, 1965, plaintiff,* while a passenger in a car driven by her husband, defendant herein, was injured in an automobile accident. As a result of the accident, plaintiff suffered brain damage and was subsequently declared a mental incompetent by the Wayne county probate court. Suit was commenced on plaintiff's behalf by her legal guardian. It was alleged that the accident occurred as a result of defendant's gross negligence.

At the time of the accident, plaintiff and defendant were husband and wife. They remain married. Defendant filed a motion to dismiss asserting that plaintiff had failed to state a claim for the reason

---

* Plaintiff in this opinion refers to Eleanor Hosko, and not to her guardian Alice Hosko.

that interspousal tort immunity precluded recovery.

This appeal is taken, upon leave granted, from an order of the Wayne county circuit court denying defendant's motion for summary judgment.

The most recent case before our Supreme Court in which the question of interspousal tort immunity arose was *Mosier* v. *Carney* (1965), 376 Mich 532. After an exhaustive reconsideration of the doctrine of interspousal tort immunity, Mr. Justice SOURIS in an opinion signed by three other members of the Court[1] concluded:

"We this day hold: (1) that a suit may be maintained predicated upon injuries to one spouse during marriage arising out of an allegedly wrongful act of the marital partner, when the allegedly wrongful act resulted in termination of the marriage by death; (2) that a suit commenced before marriage of the parties thereto may be maintained by one spouse against the other for an alleged antenuptial tort." *Mosier* v. *Carney, supra,* p 566.

Defendant contends that in this case, unlike the situation in *Mosier* v. *Carney, supra,* the allegedly wrongful act has not resulted in the termination of the marriage by death. Since this case does not fall squarely within Mr. Justice SOURIS' pronouncement that "a suit may be maintained * * * when the allegedly wrongful act resulted in termination of the marriage by death," it is argued that interspousal immunity bars plaintiff's claim. We agree.

In *Kircher* v. *Kircher* (1939), 288 Mich 669, 671, it was broadly declared that interspousal tort suits contravene the public policy of this State. Three earlier decisions had shaped that policy, establishing as a general rule the doctrine of interspousal tort

[1] T. M. KAVANAGH, C. J., and DETHMERS and ADAMS, JJ., concurred with Mr. Justice SOURIS. Mr. Justice OTIS SMITH concurred in the result. Justices KELLY and BLACK dissented. Mr. Justice O'HARA dissented in part.

immunity. See *Bandfield* v. *Bandfield* (1898), 117
Mich 80; *Harvey* v. *Harvey* (1927), 239 Mich 142;
*Riser* v. *Riser* (1927), 240 Mich 402.

In *Mosier,* Mr. Justice Souris seriously questioned
the continuing validity of the traditional, *a priori*
arguments in favor of interspousal immunity. How-
ever, the Court was unwilling to overrule its earlier
decisions and a majority of the Justices in *Mosier*
were careful to limit its effect. Speaking for three
other Justices, Mr. Justice Souris concluded:

"It is appropriate to add that what we have said
here concerning the doctrine of interspousal tort
immunity *must be considered in light of these same
fact circumstances."* 376 Mich 566. (Emphasis
supplied.)

In concurring, Mr. Justice Otis Smith noted:

"I wish it to be understood, then, that in concur-
ring in the holding of Justice Souris' opinion, I
am not voting for the abolition of all interspousal
tort immunity in Michigan, but for the *specific result*
in the cases before us." 376 Mich 573. (Emphasis
supplied.)

Mr. Justice O'Hara was also careful to limit the
extent of his agreement with Mr. Justice Souris.[2]
Thus, it is clear that *Mosier,* in effect, creates two
limited exceptions to the common-law doctrine of in-
terspousal immunity.[3] Where the tort is antenuptial
suit may be maintained. Likewise, suit may be main-
tained where the tort results in the termination of

---

[2] See 376 Mich 607.

[3] We need not decide whether *Mosier* is *stare decisis* in cases where
the facts, as alleged, fall within its limited holding. It is not clear
whether a majority of the Court subscribed to the rationale of Mr.
Justice Souris' opinion, as only three Justices signed his opinion.
*Cf. Zirkalos* v. *Zirkalos* (1949), 326 Mich 420. And see Mr. Justice
Black's dissenting opinion in *Mosier:* "The Court, having deter-
mined to reverse for reasons a majority of the Justices will not
endorse * * *." 376 Mich 596, 597.

the marriage by death. However, if the facts as alleged fall within neither of these specific exceptions, *Bandfield, Harvey* and *Riser* remain controlling.

In this case, the allegedly wrongful act has not resulted in the termination of the marriage by death. It is conceded that the parties remain married. Thus, plaintiff in effect urges that we create an additional exception to the "plain and long-established" rule of interspousal tort immunity. See *Bandfield, supra,* p 82. This we have no right to do.

In his opinion in *Mosier,* Mr. Justice SOURIS noted:

"Since the doctrine of interspousal tort immunity is a creation of the common law and since such doctrine has never been codified in this State, it is *our duty* to re-examine it and, if necessary to avoid continuing injustice, to change it." 376 Mich 543. (Emphasis supplied.)

We believe it is the duty of an intermediate appellate court to adhere to established precedent. If an additional exception to the general rule of interspousal tort immunity is to be created, the decision must be that of the Supreme Court. Since in this case the allegedly wrongful act has not resulted in the termination of the marriage by death, *stare decisis* requires that we reverse the trial court's denial of defendant's motion for summary judgment.

Reversed. Costs to appellant.

DANHOF, J., concurred.

LESINSKI, C. J. (*dissenting*). I find myself in disagreement with the views expressed by the majority. The question initially presented regarding *Mosier* v. *Carney* (1965), 376 Mich 532, is whether it stands as a narrow exception to a general rule or whether it stands for the broader proposition

that where the reasoning behind the doctrine does not apply, the doctrine itself will not be applied.

The importance of this question arises from the general, all-pervasive application of the doctrine prior to *Mosier*. In *Bandfield* v. *Bandfield* (1898), 117 Mich 80, the Court commenced its opinion with the following lines:

"The sole question is: Can a wife maintain suit against her husband for a personal tort, committed upon her while they were living together as husband and wife? We answered this question in the negative in the case of *Wagner* v. *Wayne Circuit Judge* [no opinion, not reported], decided November 17, 1897."

The language of the Court clearly implies that it was not treating each suit as a case of first impression.

The doctrine is given similar treatment in *Harvey* v. *Harvey* (1927), 239 Mich 142; *Riser* v. *Riser* (1927), 240 Mich 402; and *Kircher* v. *Kircher* (1939), 288 Mich 669. In *Kircher* the Court concluded at p 671 with the following comment:

"As has been stated, it is contrary to public policy in this State to permit one spouse to sue the other for negligent injury, and this closes the court to the action at bar brought by a resident of Michigan against her husband for a tort committed in Colorado."

My analysis of *Mosier* leads me to the conclusion that a majority of the Supreme Court adopted the view that the doctrine of interspousal immunity will no longer be a *per se* rule, but rather that each case will be examined by the courts, as was done in *Mosier*, to determine the applicability of the reasons behind the doctrine. The majority, thus, rejected the method used in the old cases of automatically applying the doctrine in every case.

The opinion of Mr. Justice SOURIS clearly refused to apply the doctrine to cases where the reasons behind the doctrine do not also apply. As was stated at p 565:

"We have examined the Michigan precedents *and have found nothing in them which logically militates against permitting prosecution of the suits here involved.* Indeed, as we have seen *the 'reasoning', if it may be called that, of those cases, has no applicability in the fact circumstances of these instant cases of first impression.*" (Emphasis supplied.)

Of the two concurring justices, Mr. Justice O'HARA appears to carve out a very limited exception to the general rule. He would allow recovery only where the wrongful act is the negligent operation of a motor vehicle and the tort results in the death of one spouse.

Mr. Justice OTIS SMITH, however, goes further and treats each of the three cases then on appeal as ones of first impression. He states beginning at p 573:

"Each of the 3 cases brings some special merit why the old rule should not apply. In *Smith* v. *King,* where the marriage no longer exists by reason of the car accident which was fatal to the husband and which seriously injured the wife, *the old reasoning is not persuasive.* In this case, plaintiff alleges that she received multiple fractures, severe internal and external injuries, and permanent damage by reason of her deceased husband's 'wilful and wanton misconduct.' * * * *The public policy reason is inapplicable in this situation because there is no marriage to defend.*

"In *Mosier* v. *Carney,* suit was brought to recover damages on behalf of the children only for the loss of their mother who died in a car accident, allegedly caused by the gross negligence of the father and the concurring negligence of another driver. If such can be proved, *I see no reason for denying to the*

*children compensable damages* which they would otherwise receive if the negligent driver had been a stranger.

"As to *Dood* v. *Mosher,* the injury complained of occurred before marriage and allegedly resulted in plaintiff losing six months from gainful employment. *The fact that the parties were married about a year after the injury should not extinguish the right to sue and recover.* And although I fully recognize that the likelihood of collusion rises sharply if there is an identity of economic interests, I am certain that the fact finder will scrutinize such claims with care where plaintiff and defendant are husband and wife and have a substantial identity of economic interest." (Emphasis supplied.)

Taken as a whole, the opinions of Justice Otis Smith and Justice Souris, which represented the views of a majority of the Court, establish two points. First, a majority of the Court is now going to treat interspousal suits as ones of first impression, and enforce the doctrine only in those cases where the reasons for the rule apply. Second, that in treating such suits as ones of first impression, the Supreme Court has held the doctrine inapplicable in two specific situations.

Following the lead of the majority in *Mosier,* we should treat the instant case as one of first impression. The question, thus, becomes whether the reasoning behind the doctrine is inapplicable to the facts of the instant case, just as the Court in *Mosier* found them inapplicable to the facts therein.

When considering the reasons behind the doctrine, the mental incompetency of a spouse has the same effect as termination of the marriage by death. Plaintiff alleges that, as a result of her husband's "wanton, wilful and gross negligence", she received severe injuries, including brain damage. It is conceded that she is now a mental incompetent as a

result of the accident. Just as where death is the injury, here too there can be no legitimate concern that the claim is frivolous.

Furthermore, in view of plaintiff's declared mental incompetency, there is little danger of collusion between plaintiff and defendant.

Finally, the mental incompetency of plaintiff caused by defendant's allegedly wrongful action would appear to have already so completely disrupted "the sacred relation of man and wife" that the instant law suit should not be barred by public policy. Moreover, as an incompetent, plaintiff will have no feelings of bitterness resulting from the suit, and defendant cannot be expected to direct any resentment towards plaintiff, since it was her legal guardian who initiated suit.

I would affirm and remand for trial with costs to plaintiff.