PEOPLE v. GAUTHIER

1. Criminal Law—Evidence—Business Records—Statutes.

The statute permitting the admission of business records in evidence as proof of the facts stated in them does not apply in criminal prosecutions (MCLA § 600.2146).

2. Criminal Law—Trial—Scene of Crime—Jury View.

A jury visit to the scene of a murder without defendant was proper where defense counsel expressly joined in the people's motion to have the jury view the scene and no testimony was taken there; under those circumstances defendant waived any right to be personally present.

3. Evidence—Business Records—Hearsay—Statutes.

A time- and date-stamped telephone call voucher bearing a deceased hotel clerk's initials and his handwritten notation that defendant, a former acting manager of the hotel, charged with the murder of the clerk, had been there, was a business record within the meaning of the business entries statute where the authenticity of the deceased's handwriting was undisputed and a proper foundation for the voucher's admission as a business record was laid by showing that the hotel management required its desk clerks to enter in a log book any unusual occurrences, including suspicious conduct by any persons entering the hotel, that decedent had, in the past, regularly made such entries, that decedent had been introduced to defendant on at least one occasion, and would have been able to recognize him, and that although decedent made his entry on a telephone voucher form rather than in the log book, this was not unusual (MCLA § 600.2145).

References for Points in Headnotes

[1, 3–5] 30 Am Jur 2d, Evidence §§ 914, 918, 927–929.
[2] 21 Am Jur 2d, Criminal Law §§ 295–297.

4. CRIMINAL LAW—EVIDENCE—BUSINESS RECORDS—ADMISSIBILITY—
CONSTITUTIONAL LAW.

Admission of hearsay evidence in the form of business records
in a criminal case under a statutory exception to the hearsay
rule should not lead to the automatic conclusion that the de-
fendant's constitutional right of confrontation has been vio-
lated, but each case should be decided on its own facts, with
the prosecution obliged to lay a foundation by showing that
the circumstances of the making of the record were such that
accuracy is highly probable; a Supreme Court decision making
business records inadmissible under the statute in criminal pros-
ecutions should be re-examined (US Const, Am VI; Const 1963,
art 1, § 20; MCLA § 600.2146).

5. CRIMINAL LAW—EVIDENCE—BUSINESS RECORDS—ADMISSIBILITY—
HARMLESS ERROR.

Error in admitting in a prosecution for murder in the com-
mission of robbery a business record made by the murdered
man showing the presence of the defendant at the place and
time of the murder was harmless error where other evidence
against the defendant was overwhelming in that there was
testimony that on three separate occasions before the rob-
bery, defendant had asked several acquaintances to assist
him in robbing the hotel where the murdered man worked
as night clerk, defendant had shown these acquaintances a
floor plan of the hotel and a pistol, and had informed them
that the robbery would take place between 2 and 3 a.m., and
that "if anybody catches me, I'll shoot them", defendant
had told another witness of plans to rob the hotel just five
days before the robbery, and evidence placing the defendant,
gun in hand, within two blocks of the hotel on the night
of the robbery, asking how much money was in the cash
drawer of another hotel, evidence that defendant was in
financial straits, and where the exact amount of money taken
from the hotel, in exactly the same denominations of bills,
was discovered in defendant's apartment when he was arrest-
ed.

Appeal from Recorder's Court of Detroit, Donald
S. Leonard, J. Submitted Division 1 October 14,
1970, at Detroit. (Docket No. 8,794.) Decided De-
cember 2, 1970. Leave to appeal denied March 5,
1971. 384 Mich 812.

David Lee Gauthier was convicted of murder in the first degree. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Robert A. Reuther,* Assistant Prosecuting Attorney, for the people.

*Charles Burke,* for defendant on appeal.

Before: J. H. GILLIS, P. J., and DANHOF and P. R. MAHINSKE,* JJ.

J. H. GILLIS, P. J. This case requires an interpretation of the right of confrontation guaranteed to criminal defendants by Const 1963, art 1, § 20,[1] as well as by virtue of the Sixth Amendment to the United States Constitution.[2] At issue is the scope of the confrontation right in criminal cases when read in light of a recognized exception to the hearsay rule—specifically, the business records hearsay exception.[3]

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] "In every criminal prosecution, the accused shall have the right * * * to be confronted with the witnesses against him."

[2] "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him."

The confrontation guarantee of the Sixth Amendment was made applicable to the states in *Pointer* v. *Texas* (1965), 380 US 400 (85 S Ct 1065, 13 L Ed 2d 923).

[3] MCLA § 600.2146 (Stat Ann 1962 Rev § 27A.2146), provides in pertinent part:

"Any writing or record whether in the form of an entry in a book or otherwise, made as a memorandum of any act, transaction, occurrence or event shall be admissible in evidence in all trials, hearings and proceedings in any cause or suit in any court, or before any officer, arbitrators, or referees, in proof of said act, transaction, occurrence or event if it was made in the regular course of any business and it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence or event or within a reasonable time thereafter. All other circumstances of the making of such

We acknowledge at the outset that *People* v. *Lewis* (1940), 294 Mich 684, stands firmly against the admission of business record hearsay in criminal cases, the statutory exception notwithstanding. In *Lewis,* the Michigan Supreme Court, *per* Mr. Justice WIEST, held at 688:

"[The] Act  *  *  *  , relative to entries and writings made in the usual course of business, does not apply to criminal cases."

We proceed here on the assumption that Justice WIEST's declaration is decisionally binding on this Court and that the Supreme Court did not intend its holding in *Lewis* to be limited to the facts of the case.[4]  However, on this appeal the people contend,

_____

writing or record including lack of personal knowledge by the entrant or maker, may be shown to affect its weight but not its admissibility. The term 'business' shall include business, profession, occupation and calling of every kind."

See generally, 5 Wigmore, Evidence (3d ed), §§ 1517–1533, pp 346–394; Comment, "Revised Business Entry Statutes: Theory and Practice," 48 Colum L Rev 920 (1948); Comment "Preserving the Right to Confrontation—A New Approach to Hearsay Evidence in Criminal Trials," 113 U Pa L Rev 741, 762–764 (1965).

[4] The *People* v. *Lewis* (1940), 294 Mich 684, case has been repeatedly cited for the broad proposition that the business records statutory exception to the hearsay rule is inapplicable in criminal cases. See, *e.g.,* 1 Gillespie, Michigan Criminal Law & Procedure, § 505, p 611: "The statute making admissible in the trial of a civil case of entries in the usual course of business does not apply to criminal cases."

See, also, *State* v. *Tims* (1967), 9 Ohio St 2d 136 (224 NE2d 348), holding the Ohio Business Records as Evidence Act inapplicable to criminal proceedings, citing *Lewis.*

This Court itself on occasion has so interpreted the *Lewis* opinion: "*People* v. *Lewis* (1940), 294 Mich 683,  *  *  *  held the statute relative to the admissibility of business records [is] inapplicable to criminal cases". *People* v. *Wolke* (1968), 10 Mich App 582, 585. Accord, *People* v. *Parm* (1968), 15 Mich App 303.

Although it is possible to read the *Lewis* opinion more narrowly, *i.e.,* limiting its broad pronouncement to the facts of the case, we think such an interpretation would, in effect, create an exception to what was otherwise intended to be a general rule. This we have no right to do. *Cf. Hosko* v. *Hosko* (1969), 20 Mich App 416, 421, *leave to appeal granted* 383 Mich 804, where in a similar situation this Court noted: "We believe it is the duty of an intermediate court to adhere to established precedent. If an  *  *  *

and we agree, that *Lewis* was incorrectly decided. Our research leads us to the view that *Lewis'* general prohibition against the use of business record hearsay in criminal cases rests upon an unsound— if indeed any—analysis of the scope of the confrontation clause. We write in the hope that the *Lewis* rule will, on an appropriate record, be re-examined by its creating tribunal. *Cf. Abendschein* v. *Farrell* (1968), 11 Mich App 662, 679. To the extent that *Lewis* required exclusion of people's exhibit no. 24 in this case, as argued by defendant on appeal, it should be overruled.

## I

Between 2 and 6 a.m. on the morning of December 27, 1966, the St. Regis Hotel in Detroit was robbed. Money was taken from the front-desk cash drawer in the amount of $516. Financial records maintained by the desk clerk indicated both the amount and the denominations of the bills taken. These records established that twenty-one 20's, six 10's, three 5's and thirteen 1's were missing.

During the robbery, Godfried R. Englehard, the night desk clerk at the St. Regis, was shot and killed. Bullets removed from Englehard's body indicated that the gun used in the robbery and shooting was a .38 caliber Smith & Wesson revolver.

On the afternoon of the 27th, Detroit police detectives, acting on information received during the course of their investigation, went to David Gauthier's apartment in Detroit and arrested him for the robbery of the St. Regis Hotel and for the murder of Godfried Englehard. Gauthier was a former employee of the St. Regis Hotel. He had been seen

---

exception to the general rule * * * is to be created, the decision must be that of the Supreme Court."

early in the morning of the 27th under circumstances which led the arresting detectives to believe that Gauthier had committed the crimes.[5]  A search of Gauthier's person and his apartment incident to his arrest disclosed that he was in possession of exactly $516 in the precise denominations taken from the St. Regis Hotel.[6]

Defendant was subsequently tried by a jury and convicted of the murder, committed in the perpetration of robbery, of Godfried Englehard. MCLA § 750.316 (Stat Ann 1954 Rev § 28.548). He was sentenced to a term of life imprisonment on August 25, 1967. We granted defendant's application for delayed appeal on April 23, 1970.

---

[5] Gauthier had been seen early in the morning of the 27th in the Howard Johnson Motor Lodge on Grand Boulevard in Detroit by the lodge's night clerk, Robert McInnis. At the time, it appeared to the clerk that Gauthier was carrying a gun and was acting suspiciously. Gauthier asked the night clerk how much money was in the cash drawer; however, after seeing the lodge's security guard, he hurried away from the lodge, turning left on Grand Boulevard. The St. Regis Hotel was approximately two blocks away from the motor lodge and to its left on Grand Boulevard. McInnis reiterated these events at trial.

From their investigation, the detectives also had reason to believe that the crimes were committed by an ex-employee of the St. Regis. They discovered that Gauthier was such a former employee.

[6] At trial, defendant objected to the introduction of the money taken from his apartment on the ground that the warrantless search of his apartment was unlawful. He reiterates this contention on appeal and we dispose of it here as without merit.

The trial judge found that the arresting detectives had, at the time of the arrest,. probable cause to believe that Gauthier had committed the robbery and murder. Defendant does not challenge this finding on appeal. He contends that the search of his entire apartment, even if incident to a lawful arrest, was unreasonable because of its unwarranted scope. See *Chimel* v. *California* (1969), 395 US 752 (89 S Ct 2034, 23 L Ed 2d 685).

The search here occurred on December 27, 1966. *Chimel* is therefore inapplicable and the search of defendant's apartment was lawful as incident to his arrest. For a full discussion of authorities, see *People* v. *Herrera* (1969), 19 Mich App 216, 228–233.

## II

At trial, the prosecution moved to have the jury visit the St. Regis Hotel, the scene of the alleged crime. The trial judge granted this motion and the jury, together with the Court, the prosecution, and defense counsel, visited the hotel. Defendant, however, was not present at the scene; he was being held in the county jail without bond. Defendant alleges as error the trial court's action in allowing the jury to visit the hotel without defendant's personal presence.

There was no error. Defense counsel expressly joined the people's motion: "I also ask that the jury be taken there under guard, of course." No testimony was taken at the scene. Under these circumstances, we hold that defendant waived any right to be personally present.

"It is not necessary that the respondent accompany the jurors upon a view of the premises. A respondent may waive his right to accompany the jury upon a view of the premises, but nothing in the nature of testimony may be taken during his absence." 2 Gillespie, Michigan Criminal Law & Procedure, § 579, p 748.

See, also, 2 Gillespie, Michigan Criminal Law & Procedure, § 601, pp 779, 780; *People* v. *Auerbach* (1913), 176 Mich 23; *People* v. *Raider* (1931), 256 Mich 131; *People* v. *Connor* (1940), 295 Mich 1.

We pass to a consideration of the alleged error in the admission in evidence of people's exhibit no. 24.

## III

The exhibit itself was a message written in the handwriting of the deceased night clerk, Godfried Englehard. The message reads:

"David, former acting manager, has been here."

This message was written on a long distance telephone call voucher.  Such vouchers were ordinarily kept at the hotel's front desk in order that the clerk on duty might record the calls of hotel guests for appropriate billing.  The voucher in question was time- and date-stamped on the hotel's time recorder, which was also kept at the front desk for use by the hotel's desk clerks.  The time and date were recorded as 2:23 a.m., December 27, 1966, followed by two question marks and initialed, "G.E."

There is no dispute concerning the authenticity of people's exhibit no. 24.  Mrs. Englehard, as well as Frank Bromber, manager of the St. Regis Hotel, testified at trial that the handwriting on the voucher was that of Godfried Englehard.

The note, however, was challenged as inadmissible hearsay by defense counsel at trial.[7]

It was the people's theory at trial that exhibit 24 was a business record and, as such, admissible to prove the truth of the matter therein stated, *i.e.,* that David Gauthier, who the people's proofs established was a former acting manager of the St. Regis Hotel, was present in the hotel on December 27, 1966, at 2:23 a.m.  Such evidence, if admissible, together with the people's other circumstantial evidence, tended to show that defendant Gauthier had committed the crime as alleged.

---

[7] Defense counsel specifically objected at trial to the lack of cross-examination of the declarant Godfried Englehard: "We have no safeguard against it as to the material on there.  The time stamp could have been made on the slip after the writing, we do not have any maker available for examination, *no witness to cross-examine as to the making * * * .  Defense counsel and the defendant are entitled to have before them at the open proceedings, every witness who is going to bear witness against him,* and the man who made this document is not here * * * ."  (Emphasis supplied.) Compare notes 1 and 2, *supra.*

The people established the following foundation for admission in evidence of exhibit 24 as a business record: Frank Bromber, the deceased's supervisor, testified that he discovered exhibit 24 on January 27, 1967, approximately one month after the robbery and murder. The voucher was found among traffic sheets used by the hotel in the ordinary course of its business to record long distance telephone calls. Bromber testified that the hotel maintained a log book for use by its desk clerks. The clerks were to enter any unusual occurrences in the log, including suspicious conduct on the part of individuals entering the hotel. This information was to be related to the management. Bromber further testified that the deceased, Godfried Englehard, was obliged as a desk clerk to record suspicious looking individuals in the log book, and that Englehard, in the past, had made regular entries in the log book.

Bromber's testimony established that it was part of the hotel's regular business routine, supported by a legitimate business interest, to record such entries in the log book and that Englehard's duties specifically included making such entries. Bromber further testified that, although the entry in this case was not made in the log book, he did not consider this unusual.

There was testimony that Englehard had been introduced to the defendant Gauthier on at least one occasion and that Englehard, had he seen defendant on the night in question, would have been able to recognize him.

On this foundation, we think exhibit 24 was a "business record" within the meaning of the business records hearsay exception and the business entries statute, MCLA § 600.2146 (Stat Ann 1962 Rev § 27A-.2146). The foundation here fairly duplicates the record made in *Keeble* v. *United States* (CA8, 1965),

347 F2d 951, *cert den* (1965), 382 US 940 (86 S Ct 394, 15 L Ed 2d 350), in support of admission under the Federal Business Records Act[8] of a log entry to prove an individual's whereabouts on an occasion in question:

"The log was offered for the purpose of proving that appellant entered the project at 10:40 a.m. on May 9 and not at some earlier hour. The log was, of course, hearsay, and appellant objected to its admission on that basis.

"In support of its contention that the log was admissible the Government relies on the Federal Business Records Act, as amended, 28 USCA § 1732(a).

\*        \*        \*

"Appellant argues that the log is not such a document as falls within the terms of the statute and, further, that in any event the concessions of Crawford in the course of his cross-examination so impugned the reliability of the log as to render it inadmissible. We do not agree.

"That the log consists of a series of 'business entries' and falls within the scope of the statute seems clear. The contractors on the Taum Sauk Project had a legitimate interest in recording visits to the Project and in knowing when visitors entered and

---

[8] 28 USCA § 1732(a). The statute is as follows:

"In any court of the United States and in any court established by Act of Congress, any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of such act, transaction, occurrence, or event, if made in regular course of any business, and if it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter.

"All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but such circumstances shall not affect its admissibility.

"The term 'business', as used in this section, includes business, profession, occupation, and calling of every kind."

The Federal Business Records Act is, in relevant respects, exactly like the Michigan act. See footnote 3, *supra*.

left the premises, and according to the testimony of Barker and Crawford those records were kept regularly and as part of the contractors' regular routine of business. That the contractors may have been more interested in knowing who came and went than in knowing when they came and went is not material. See *Finnegan* v. *United States* (CA8 1953), 204 F2d 105; *United States* v. *Moran* (CA2 1945), 151 F2d 661 (167 ALR 403); *United States* v. *General Motors Corporation* (CA7, 1941), 121 F2d 376.

"Viewing the testimony of Crawford on cross-examination in the light most favorable to appellant, we think that his concessions about the log entries which have been mentioned simply went to the weight to be given to the log rather than to its admissibility. *Cf. Thomas* v. *Hogan* (CA4, 1962), 308 F2d 355; *LaPorte* v. *United States* (CA9, 1962), 300 F2d 878; *United States* v. *Kimmel* (CA2, 1960), 274 F2d 54.

"Hence, we conclude that the trial court acted properly in admitting the log for whatever it might be worth in the eyes of the jury as triers of the facts." 347 F2d at 953, 954.

See, also, *Valli* v. *United States* (CA1, 1938), 94 F 2d 687; *Finnegan* v. *United States* (CA8, 1953), 204 F2d 105; *Wilson* v. *United States* (CA8, 1965), 352 F2d 889; *Commonwealth* v. *Sousa* (1966), 350 Mass 591 (215 NE2d 910); *State* v. *Roisland* (1969), 1 Or App — (459 P2d 555).

Likewise, in the present case, Bromber testified that exhibit 24 was a record kept regularly and as part of the hotel's business. And, although it is true that Englehard's entry on this particular occasion was not made in the log book, we regard this disparity as affecting the weight, rather than the admissibility, of the entry in question. *Cf. Keeble* v. *United States, supra.* We do so for several reasons.

First, as stated in *LaPorte* v. *United States* (CA9, 1962), 300 F2d 878, 880:

"The content and method of preparation of the document sought to be introduced as a business record are relevant to the extent that they bear upon whether the particular document was prepared in the course of systematic routine office procedures to record information relating to, and to be used in, the routine operations of the business of agency. If the particular document is not of this sort it would not be admissible as a business record. *But if it is a record of this character, then it is admissible, whether or not it is also a type of document which is prepared repeatedly, or always in precisely the same way, or with precisely the same content.* And of course the admissibility of a document, as distinguished from its weight, normally does not depend upon either completeness or freedom from ambiguity." (Emphasis supplied.)

In this case, both the content of exhibit 24 and the method of preparation suggest that it was, indeed, prepared in the course of a systematic routine office procedure. The voucher records an event, *i.e.*, the presence of "David, former acting manager," in the St. Regis at 2:23 a.m., December 27, 1966. Significantly, two question marks appear on the face of exhibit 24. Although the inference is not conclusive, we think it permissible to infer from these marks that Gauthier's presence in the hotel at 2:23 a.m. was considered unusual by Godfried Englehard. And the recordation of unusual events was precisely the routine business task assigned to Englehard as part of his duties as a desk clerk.

Similarly, the circumstances surrounding preparation of the voucher suggest that exhibit 24 was a document used in the routine business operations of the hotel. The message itself was recorded on a

telephone voucher. Such vouchers were used in the course of the hotel's business; they were accessible to the deceased while he was performing his tasks as a desk clerk. The voucher was time- and date-stamped on the time machine utilized in the course of the hotel's business. This machine was available to the deceased only while he was performing his tasks at the St. Regis Hotel. Exhibit 24 was found among the hotel's business records where presumably Englehard had left it in accordance with Bromber's instructions to him to disclose all unusual events to the management. All of these circumstances undermine defendant's contention on appeal that exhibit 24 is but "a random piece of paper". To the contrary, by its content and preparation, it is fairly evident that "the particular document was prepared in the course of systematic routine office procedures to record information relating to, and to be used in, the routine operations of the business or agency." *LaPorte* v. *United States, supra,* at 880.

The trial judge was satisfied from all the circumstances that exhibit 24 was admissible in evidence as a business record.[9] The court was particularly impressed by the fact that Englehard was under a duty to his employer; that, as noted by the trial judge, Bromber "had notified the clerk to enter anything that might be considered suspicious."

Our research reveals that the trial judge was on sound theoretical ground. One of the reasons justifying the admission of business record hearsay notwithstanding the absence of cross-examination is that the declarant is under a duty to his employer

---

[9] It does not appear from the record whether the *Lewis* case was brought to the trial court's attention, although defense counsel argued the rationale of the *Lewis* case to the court. See footnote 7, *supra.* Apparently, the trial court was unaware of the existence of the *Lewis* rule. For a similar reported experience, see *People* v. *Wolke,* footnote 4, *supra,* at 585.

to make such declarations.  Wigmore puts it this way:

"In the typical case of entries made systematically and habitually for the recording of a course of business dealings, experience of human nature indicates three distinct though related motives which operate to secure in the long run a sufficient degree of probable trustworthiness and make the statements fairly trustworthy:

"(1) The habit and system of making such a record with regularity calls for accuracy through the interest and purpose of the entrant; and the influence of habit may be relied on, by very inertia, to prevent casual inaccuracies and to counteract the possible temptation to misstatements.   *   *   *

"(2) Since the entries record a regular course of business transactions, an error or misstatement is almost certain to be detected and the result disputed by those dealing with the entrant; misstatements cannot safely be made, if at all, except by a systematic and comprehensive plan of falsification.  As a rule, this fact (if no motive of honesty obtained) would deter all but the most daring and unscrupulous from attempting the task; the ordinary man may be assumed to decline to undertake it.  In the long run this operates with fair effect to secure accuracy.

"(3) If, in addition to this, the *entrant makes the record under a duty to an employer or other superior, there is the additional risk of censure and disgrace from the superior, in case of inaccuracies,—a motive on the whole the most powerful and most palpable of the three.*"  5 Wigmore, Evidence (3d ed), § 1522, p 369.   (Emphasis supplied.)

See, also, Comment, "Preserving the Rights to Confrontation—A new Approach to Hearsay Evidence in Criminal Trials", 113 U Pa L Rev 741, 763.

Each of the above-quoted reasons justifying admissions of business record hearsay is present in

this case. On the record presented, we share the conclusion reached by the trial judge that exhibit 24 was prepared under such circumstances as provided a substantial guarantee of trustworthiness. In each case, "the test is one of reliability", *United States* v. *Hickey* (CA7, 1966), 360 F2d 127, 143, *cert den* (1966), 385 US 928 (87 S Ct 284, 17 L Ed 2d 210); see, also, *Palmer* v. *Hoffman* (1943), 318 US 109 (63 S Ct 477, 87 L Ed 645); *United States* v. *DeGeorgia* (CA9, 1969), 420 F2d 889, 894–896 (concurring opinion, Ely, J.). The record here meets that test. It cannot be said that the trial judge abused his discretion in admitting people's exhibit 24 as a business record. *Cf. Zacher* v. *United States* (CA8, 1955), 227 F2d 219; *McDaniel* v. *United States* (CA5, 1965), 343 F2d 785, *cert den* (1965), 382 US 826 (86 S Ct 59, 15 L Ed 2d 71); *Johnson* v. *State* (Del, 1969) (253 A2d 206).

## IV

However, the trial judge had no discretionary authority in this case. *People* v. *Lewis, supra,* settles the question. It was error to admit exhibit 24 as a business record for the reason that, under *Lewis,* business record hearsay is inadmissible in criminal cases.

## V

The *Lewis* Court assigned the following reason for the exclusion of business record hearsay in criminal cases as a matter of law.

"In a criminal case the accused has a right to be confronted by the witnesses against him. Constitution of Michigan (1908), art 2, § 19. See *People* v. *Lambert* [1858], 5 Mich 349 (72 Am Dec 49); *People* v. *Sligh* [1882], 48 Mich 54; *People* v. *Dow* [1887], 64 Mich 717 (8 Am St Rep 873). This

accords right of questioning." *People v. Lewis, supra,* at 687.

Lewis thus suggests that admission in a criminal case of business record hearsay under the statutory exception violates the confrontation right in criminal cases. With this broad suggestion, we cannot agree.

It is a mistake to conclude that where hearsay evidence is admitted in a criminal case, confrontation rights of the accused necessarily have been violated. As recently stated by the United States Supreme Court:

"[M]erely because evidence is admitted in violation of a long-established hearsay rule does not lead to the automatic conclusion that confrontation rights have been denied." *California* v. *Green* (1970), 399 US 149, 156 (90 S Ct 1930, 1934; 26 L Ed 2d 489, 495, 496).

*Lewis,* we think, rests upon such an automatic conclusion; specifically, that merely because business record evidence is hearsay, its admission violates the confrontation right. In our view, and in the view of the overwhelming weight of authority, see *infra,* this is erroneous. The *Lewis* rule is thus predicated on a mistaken interpretation of the scope of the confrontation right in criminal cases.

So far as our research has determined, *Lewis* stands alone, with but one exception,[10] in holding that the business records statutory exception to the hearsay rule is inapplicable in criminal cases. The following authorities are to the contrary: *State* v.

---

[10] *State* v. *Tims,* note 4, *supra.* This case, because it relies exclusively on *Lewis,* is subject to the same criticisms we think appropriate with regard to *Lewis.* It is interesting to note that the *Tims* opinion has received unfavorable review, see Note, 6 U Cin L Rev 734 (1967); indeed, it has even been ignored in subsequent Ohio decisions, see *State* v. *Mitchell* (1969), 18 Ohio App 2d 1 (246 NE2d 586).

*Hayes* (1941), 127 Conn 543 (18 A2d 895); *State*
v. *Paulette* (1969), 158 Conn 22 (255 A2d 855);
*Jones* v. *State* (1954), 205 Md 528 (109 A2d 732);
*State* v. *Ramstad* (ND, 1958), 87 NW2d 736; *State*
v. *Durham* (Mo, 1967), 418 SW2d 23; *Hyman* v. *State*
(1968), 4 Md App 636 (244 A2d 616); *People* v.
*Foster* (1970), 27 NY2d 47 (261 NE2d 389); *Commonwealth* v. *Sousa* (Mass), *supra; State* v. *Roisland* (Or), *supra; Johnson* v. *State* (Del), *supra;
United States* v. *Leathers* (CA2 1943), 135 F2d
507; *Keeble* v. *United States, supra; La Porte* v.
*United States, supra; United States* v. *Hickey,
supra; Zacher* v. *United States, supra; McDaniel* v.
*United States, supra; United States* v. *DeGeorgia,
supra.*

Moreover, several of the above-cited authorities,
contrary to *Lewis,* expressly hold that admission in
evidence of properly qualified business record hearsay does not violate the confrontation right. See
*State* v. *Hayes, supra; Jones* v. *State, supra; State*
v. *Durham, supra.*

*United States* v. *Leathers, supra,* is the leading
case on the subject. In *Leathers,* the court, *per*
Augustus Hand, said:

"The appellant Thomas argues that the records
in question would not be admissible under the early
common law rules and that the recent judicial and
statutory changes we have referred to [Federal
Business Records Act] are in contravention of the
Sixth Amendment. But statements by relatives as
to pedigree, declarations against interest, and most
important of all in criminal trials, dying declarations, have long been recognized as admissible. It
is not necessary to say what limits the Sixth Amendment may set to the extension of exceptions to the
rule against hearsay. Probably the permissible extension is a question of degree. *We think that business records kept as a matter of ordinary routine*

*are often likely to be more reliable than dying decla-
rations. It cannot be reasonably argued that the
extension of the common law book entry rule* which
we discussed in *Massachusetts Bonding & Ins. Co.* v.
*Norwich Pharmacal Co.* [(CA2, 1927), 18 F2d 934],
*or the statute cited above, involve any violation of
the Sixth Amendment."* 135 F2d at 511. (Empha-
sis supplied.)

Similarly, in *McDaniel* v. *United States, supra,* at
789, the court noted:

"Appellant next argues that the admission of ex-
hibit 986 constituted a denial to him of his right of
confrontation as guaranteed in a criminal prosecu-
tion. The United States Constitution, Amendment
VI. This question may arise when a document fall-
ing under 28 USCA § 1732(a) is offered at the trial:
Does that statute transgress the right of confronta-
tion granted by the Sixth Amendment? We do not
believe that all documents covered by the statute in
all cases are admissible in a criminal trial, but the
trial judge has the duty to determine in each instance
whether such documents are constitutionally admis-
sible under the Sixth Amendment guarantee of con-
frontation. The trial judge made no error here, and
*it has been customarily held that the right of con-
frontation may not be invoked to exclude evidence
otherwise admissible under well-established legiti-
mate exceptions to the hearsay rule. Kay* v. *United
States* (CA4, 1958), 255 F2d 476; *Matthews* v. *Unit-
ed States* (CA5, 1964), 217 F2d 409; *United States*
v. *Leathers* (CA2, 1943), 135 F2d 507; 5 Wigmore,
Evidence (3d ed), § 1397, pp 127–134." (Emphasis
supplied.)

In *United States* v. *Johns-Manville Corporation*
(ED Pa, 1963), 225 F Supp 61, the court had occa-
sion to reject the very rule *Lewis* promulgates. It
was held that any blanket prohibition against the use
of business record hearsay in criminal cases is un-

sound as a matter of law—the confrontation right notwithstanding.

" '[T]he Sixth Amendment does not prevent creation of new exceptions to the hearsay rule based upon real necessity and adequate guarantees of trustworthiness' in the light of the requirement of confrontation of the Sixth Amendment. * * *

\* \* \*

"The question may arise, when a document falling under 28 USC § 1732(a) is offered at the trial: Does that statute transgress the right of confrontation granted by the Sixth Amendment? No blanket pretrial ruling, as requested by defendants, is possible on this record." 225 F Supp at 62, 63.

Commentators have likewise characterized *Lewis* as "[an] anomalous restriction [which] seems wholly unwarranted in view of the fact that confrontation has never been required where evidence is admitted by virtue of any of the common law exceptions to the hearsay rule." Comment, "Revised Business Entry Statutes: Theory and Practice," 48 Colum L Rev 920, note 45 at 926 (1948). And see, Comment, "Preserving the Right to Confrontation —A New Approach to Hearsay Evidence in Criminal Trials," 113 U Pa L Rev 741, 762–764 (1965).

Finally, the cases on which Mr. Justice WIEST relied in declaring that business entries are inadmissible in criminal cases because of the confrontation clause have been sharply criticized—at least in one particular (*People* v. *Dow, supra*):

"*People* v. *Dow* * * * supports defendant's contention, holding that it was error in a trial for burglary to admit the official record kept by the officer in charge of a United States signal service station to show the condition of the weather on the night in question, without producing the man who made the observations. We are unable to concur in

this conclusion; the record offered was the same sort of record, kept for governmental purposes by government employees, which was competent proof of the facts it purported to record before the Constitution was adopted, and we are not satisfied that by its adoption such proof was made incompetent. *The case cited seems to us to be one* of those referred to in *Mattox* v. *United States* [(1895), 156 US 237 (15 S Ct 337, 39 L Ed 409)] *where a 'technical adherence to the letter of a constitutional provision (has been) carried further than is necessary to the just protection of the accused and farther than the safety of the public will warrant.'* " *Heike* v. *United States* (CA2, 1911), 192 F 83, 95, *affirmed* [1913], 227 US 131 (33 S Ct 226, 57 L Ed 450). (Citation omitted.)   (Emphasis supplied.)

We think it time for the Supreme Court to reexamine its holding in *Lewis.* The question of the admissibility of a business record in a criminal case should not be left to any general prohibition against such use.   Rather, in our view, each case should be decided on its own facts.   In each case, the people should be obliged to convince the trial court, by way of a firm foundation of admissibility, that the circumstances of the making of the record are such that accuracy is highly probable.   Where, however, as here, the trial court is convinced of the trustworthiness of the particular record in question, it should be admitted in evidence.

## VI

Although under *Lewis* admission of exhibit 24 was error, we need not reverse defendant Gauthier's conviction in this case.   We are convinced that the error, even assuming error of constitutional dimension, was harmless beyond a reasonable doubt.   See *Harrington* v. *California* (1969), 395 US 250 (89 S Ct 1726, 23 L Ed 2d 284); *People* v. *Shirk* (1970),

383 Mich 180, 196; *People* v. *Childers* (1969), 20 Mich App 639, 650, 651.

The case against defendant, apart from exhibit 24, was overwhelming. There was testimony that on three separate occasions before the robbery, defendant had asked several acquaintances to assist him in robbing the St. Regis Hotel. He had shown these acquaintances a floor plan of the St. Regis; he had also informed them that the robbery would take place between 2 and 3 a.m., and that "If anybody catches me, I'll shoot them". According to the testimony of one Williams, defendant Gauthier had informed him of plans to rob the St. Regis Hotel just five days before the actual event. Gauthier had also shown his .38-caliber Smith & Wesson revolver, "his equalizer", to these same acquaintances. There was evidence independent of exhibit 24 which placed the defendant, gun in hand, within two blocks of the St. Regis Hotel on the night in question. At that time, he was acting suspiciously and had a curious interest in the amount of money contained in the cash drawer of the Howard Johnson Motor Lodge. See footnote 5, *supra*. There was testimony that Gauthier was in serious need of money; he was unemployed at the time of the robbery and in financial straits. Finally, the very amount of money taken from the St. Regis, in exactly the same denominations, was discovered in Gauthier's apartment when he was arrested for the crime.

In light of the record, admission of exhibit 24 was harmless error. *Cf. People* v. *Wolke* (1968), 10 Mich App 582; *People* v. *Boyles* (1968), 11 Mich App 417; *People* v. *Williams* #2 (1970), 23 Mich App 711. No miscarriage of justice appears. MCLA § 769.26 (Stat Ann 1954 Rev § 28.1096). Accordingly, defendant's conviction is affirmed.

All concurred.