PEOPLE v LESTER

OPINION OF THE COURT

1. CRIMINAL LAW—APPEAL AND ERROR—CONSTITUTIONAL RIGHTS—
   PRESERVING QUESTION.

   Appellate review of a claim where a constitutional right is likely
   to have been infringed is not precluded ·by the defendant's
   failure to object at the trial.

2. CRIMINAL LAW—EVIDENCE—BUSINESS RECORDS—CONSTITUTIONAL
   RIGHTS—CONFRONTATION—HARMLESS ERROR.

   Admission into evidence of business records in the form of time
   cards in a criminal case violated a defendant's constitutional
   right of confrontation but the error was harmless beyond a
   reasonable doubt where the time cards in no way related to the
   defendant's presence at the scene of the crime and in no way
   directly corroborated an eyewitness's account of what occurred,
   and where overwhelming convicting evidence had been pre-
   sented.

3. CRIMINAL LAW—APPEAL AND ERROR—PRESERVING ISSUE.

   A defendant failed to preserve the issue and is precluded from
   complaining on appeal about a line of questioning by the
   prosecutor in which he acquiesced at the trial.

4. CRIMINAL LAW—DUE PROCESS—EVIDENCE—DISCLOSURE—PROSECU-
   TOR'S DUTY.

   The defendant was not deprived of due process of law by the
   prosecution's failure to disclose to defense counsel that the
   police were in possession at the time of the trial of a .22-caliber
   pistol and a ballistics test performed on it where there was no
   request made prior to trial or during trial for disclosure of

REFERENCES FOR POINTS IN HEADNOTES
[1] 53 Am Jur, Trial § 827.
[2, 5] 30 Am Jur 2d, Evidence §§ 945, 950.
[3] 5 Am Jur 2d, Appeal and Error §§ 624–627.
   What constitutes books of original entry within rule as to admissi-
   bility of books of account, 17 ALR2d 235.
[4] 29 Am Jur 2d, Evidence § 178.

evidence of this type, no allegation that the prosecutor deliberately withheld this information from defendant's counsel and the record reveals no bad faith on the part of the prosecutor, and where there was nothing in the police file to indicate that this was the gun used to murder the deceased.

DISSENT BY T. M. BURNS, P. J.

5. CRIMINAL LAW—EVIDENCE—BUSINESS RECORDS—PREJUDICE—CREDIBILITY.

*The admission of business records in the form of time cards indicating that an eyewitness's brother and a companion were at work at the time of a killing was highly prejudicial to the defendant and was not harmless error where such records negated the defendant's theory of the case that the eyewitness, his brother, or their friend committed the crime and that the eyewitness implicated the defendant to protect one or more of the trio; the admission of the time cards not only undermined the defendant's theory of the case but also impermissibly bolstered the credibility of the eyewitness.*

Appeal from Washtenaw, William F. Ager, Jr., J. Submitted Division 2 October 8, 1973, at Lansing. (Docket No. 15340.) Decided December 6, 1973.

Clark Lester was convicted of murder in the first degree. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William F. Delhey,* Prosecuting Attorney, and *John J. Hensel,* First Assistant Prosecuting Attorney, for the people.

*Keyes, Creal & Hurbis, P. C.* (by *Thomas R. Burns),* for defendant.

Before: T. M. BURNS, P. J., and V. J. BRENNAN and VAN VALKENBURG,* JJ.

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

V. J. BRENNAN, J. Defendant, Clark Lester, was convicted by a jury in the Washtenaw County Circuit Court of murder in the first degree (MCLA 750.316; MSA 28.548). A motion for new trial was filed on August 1, 1968. An evidentiary hearing on the motion was begun but was, on defense counsel's request, adjourned without date. A supplement to the motion for new trial was filed in August of 1971, and an evidentiary hearing held thereon. On August 4, 1972, the motion was denied. Defendant now appeals.

Defendant first contends that the admission of certain time cards into evidence constituted a violation of his constitutional right of confrontation as guaranteed by Const 1963, art 1, § 20 and the Sixth Amendment to the United States Constitution. Although defendant objected to the admission of these cards when they were offered into evidence, his objection was based on relevancy. The prosecution contends that this Court should not now consider this issue because the objection below did not encompass the grounds for reversal now urged. We disagree. It is settled law in this state that failure to object does not preclude this Court from reviewing a claim where a constitutional right is likely to have been infringed. *People v Thomas,* 44 Mich App 649; 205 NW2d 604 (1973); *People v Cotton,* 38 Mich App 763; 197 NW2d 90 (1972).

In *People v Lewis,* 294 Mich 684; 293 NW 907 (1940), our Supreme Court held that it was error to admit business records into evidence in a criminal proceeding under an exception to the hearsay rule because to do so deprives the defendant of his

right of confrontation.[1] The admission of the time
cards in the case at bar, therefore, clearly consti-
tuted error. This does not mean, however, that we
are required to reverse defendant's conviction on
this point. The business records admitted in *Lewis*
directly corroborated testimony of the complaining
witness and reversible error was, therefore, found
to have been committed. In *People v Gauthier,* 28
Mich App 318; 184 NW2d 488 (1970), *leave den,*
384 Mich 812 (1971), however, this Court held that
although error was committed when certain busi-
ness records were admitted into evidence, the
error was harmless beyond a reasonable doubt
because of the overwhelming convicting evidence
which had been presented. We are convinced that
the error in the case at bar was harmless beyond a
reasonable doubt also. See *People v Parm,* 15 Mich
App 303; 166 NW2d 536 (1968); *People v Wolke,* 10
Mich App 582; 159 NW2d 882 (1968). The time
cards in no way related to defendant's presence at
the scene of the crime and in no way directly
corroborated the eyewitness's account of what oc-
curred. We cannot say that reversible error was
committed by allowing these cards into evidence.

Defendant next contends that the trial court
committed reversible error by allowing the prose-
cutor to raise and put into issue the defendant's
character and reputation before the defendant had
done so. An examination of the record reveals that
although defendant's counsel initially objected to
the line of questioning sought to be pursued by the
prosecutor in his cross-examination of defendant,
an agreement was subsequently reached between

---

[1] The holding of the Supreme Court in *Lewis* was subjected to
vigorous criticism in *People v Gauthier,* 28 Mich App 318; 184 NW2d
488 (1970), *leave den,* 384 Mich 812 (1971), and is presently being
reconsidered in *People v Kirtdoll,* 44 Mich App 237; 205 NW2d 44
(1972), *leave granted,* 389 Mich 784 (1973). Until the Supreme Court
overrules *Lewis* we are bound by that decision.

the parties as to the permissible scope of the cross-examination. The questioning by the prosecutor thereupon continued with defense counsel raising and then withdrawing an objection to one specific question. In light of these facts it is clear that this issue has not properly been preserved for appeal. *People v Robert Lee,* 40 Mich App 239; 198 NW2d 818 (1972), *leave den,* 387 Mich 795 (1972); *People v Ray Clifton Smith,* 20 Mich App 243; 174 NW2d 22 (1969). Defendant, for whatever reason, acquiesced in this line of questioning and cannot now be heard to complain.

Defendant finally contends that he was deprived of due process of law by the prosecution's failure to disclose to defense counsel the fact that a .22-caliber pistol and a ballistics test performed thereon were in the possession of the police at the time of trial. This issue was first raised by defendant in his motion for new trial and is thus properly before us for our consideration. *People v Stedman,* 41 Mich App 393; 200 NW2d 370 (1972).

A hearing was held on defendant's motion for new trial at which testimony was presented revealing that, from the time defendant was first questioned, the police had in their custody a .22-caliber pistol and ballistics tests which had been performed thereon. Defendant was apprised of the fact that the gun was in the possession of the police during questioning but his counsel was never so informed. No request was made prior to or during trial for disclosure of evidence of this type. There is no allegation that the prosecutor deliberately withheld this information from defendant's counsel and the record does not reveal any bad faith on the part of the prosecutor. A police officer who participated in the initial investigation of this crime testified that there was

nothing in the police file to indicate that this was the gun used to murder the deceased. Under these circumstances we feel that this case falls within the class of cases the Second Circuit Court of Appeals was speaking about in *United States v Keogh,* 391 F2d 138, 148 (CA 2, 1968), quoted with approval in *Giglio v United States,* 405 US 150; 31 L Ed 2d 104; 92 S Ct 763 (1972), wherein it was said:

"To invalidate convictions in such cases because a combing of the prosecutors' files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict would create unbearable burdens and uncertainties."

An examination of the trial transcript reveals that defendant's account and theory of what transpired on the night in question was effectively presented to the jury who chose to disbelieve him. We are unable to perceive how the evidence complained of on this appeal would have changed that result. At the hearing on his motion for new trial, defendant, with respect to this issue, failed to establish anything beyond the fact that his counsel was not apprised of the existence of these items. The statement that this weapon was not involved in the case remains undisputed.

Affirmed.

VAN VALKENBURG, J., concurred.

T. M. BURNS, P. J. *(dissenting).* I cannot subscribe to the majority's conclusion that the admission of the time cards was harmless error.

The theory propounded by the defense in its opening statement and pursued throughout the trial was that either the prosecution's only

eyewitness to the homicide, the eyewitness's brother, or their companion, perpetrated the killing and that the eyewitness accused the defendant of the killing in order to protect himself or the other two parties. To support this theory the defense introduced evidence to show that prior to the killing the eyewitness's brother had established an intimate relationship with another man's wife and that her husband had threatened the eyewitness's brother. For that reason the defense contended that the brother had borrowed the defendant's auto on three occasions, *i.e.,* a week before the homicide, the day prior to the homicide, and on the day of the killing itself. The defense theorized that on the day of the homicide the eyewitness, his brother, and their companion left work in the brother's vehicle which was a make similar to the defendant's, that they came upon an auto resembling that of the husband who had threatened the brother, that they panicked and shot the driver of the other vehicle who, as it turned out, was someone other than the husband. Moreover the eyewitness admitted that a day or two before the homicide his brother and the defendant traded autos and that the husband followed the defendant in this auto for an extended period of time before they went to their respective employment.

The admission of the time cards contrary to the mandate of *People v Lewis,* 294 Mich 684; 293 NW 907 (1940), which proscribes the admission of business records in criminal cases, indicated the companion and the eyewitness's brother were at work at the time of the killing thus negating the defendant's theory of the case that the eyewitness, his brother, or their friend committed the crime and that the eyewitness implicated the defendant in order to protect one or more of the trio. Therefore

the admission of the time card evidence was highly prejudicial to the defendant.

Clearly the evidence produced against the defendant was not overwhelming. Only one witness was produced who could identify the defendant as the killer. The admission of the time cards not only undermined the defendant's theory of the case but also impermissibly bolstered the credibility of the eyewitness. It cannot be said that the jury completely ignored the import and purpose of the time card evidence.

Accordingly to cure the prejudice engendered by the time card evidence, I vote to reverse and remand for a new trial.