PEOPLE v KIRTDOLL

1. CRIMINAL LAW—EVIDENCE—STATUTES—BUSINESS ENTRIES.

The business entry statute clearly allows business entries in all trials and nothing anywhere in the statute suggests business entries be treated differently in *criminal* trials from civil trials (MCLA 600.2146).

2. EVIDENCE—BUSINESS ENTRIES—STATUTES—CROSS-EXAMINATION.

The business entry statute as enacted by the Legislature and interpreted in civil cases carefully secures the trustworthiness of the material admissible into evidence and as a consequence, there is reasonable assurance that only the truth will be presented in evidence and that the safeguard of cross-examination is not necessary to assure the truth (MCLA 600.2146).

3. CRIMINAL LAW—EVIDENCE—BUSINESS ENTRIES—STATUTES.

Records admissible in evidence under the business entry statute are admissible in criminal as well as civil cases; *People v Lewis*, 294 Mich 684 (1940), is overruled insofar as it is in conflict with this holding (MCLA 600.2146).

4. RAPE—PROOFS—PHYSICIANS AND SURGEONS—WITNESSES.

Proof of rape requires the showing of penetration and, in addition, requires the showing of use of force where the woman is past the age of consent; the attending physician just after the commission of the rape is normally the best witness to these facts and in fact attending physicians have even been designated as res gestae witnesses.

5. RAPE—PHYSICIANS AND SURGEONS—WITNESSES—INDORSED WITNESS
   —APPEAL AND ERROR.

The examining physician in a rape case was an appropriately indorsed witness and the state did not exercise sufficient effort in producing him; this is reversible error.

REFERENCES FOR POINTS IN HEADNOTES
[1–3] 30 Am Jur 3d, Evidence §§ 929–935.
[4–6] 65 Am Jur 2d, Rape § 58.

6. ROBBERY—RAPE—PHYSICIANS AND SURGEONS.
Failure to produce a physician who attended the victim of a rape and robbery does not taint the robbery armed count.

Appeal from Court of Appeals, Division 1, Danhof, P. J., and Levin and Borradaile, JJ., reversing and remanding Recorder's Court of Detroit, Robert L. Evans, J. Submitted November 9, 1973. (No. 16 November Term 1973, Docket No. 54,569.) Decided April 16, 1974.

44 Mich App 237 reversed.

Willie Kirtdoll was convicted of rape and armed robbery. Defendant appealed to the Court of Appeals. Reversed and remanded for a new trial. The people appeal. Rape conviction reversed and robbery armed conviction affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Robert A. Reuther,* Assistant Prosecuting Attorney, for the people.

*Sidney Kraizman,* for defendant on appeal.

WILLIAMS, J. Whether the Michigan business entry statute[1] authorizes the admission into evidence of a hospital record in a criminal trial is the jurisprudentially significant issue in this case. The issue was first raised almost 35 years ago by this Court in *People v Lewis,* 294 Mich 684; 293 NW 907 (1940). There we held that admission of such records in a criminal case "without calling the maker thereof" would deny the accused his consti-

---

[1] MCLA 600.2146; MSA 27A.2146.

tutional right to confront his accusers. US Const, Am VI; Const 1963, art 1, § 20.

In its 35-year-long history, *Lewis* has been cited a number of times in this Court and in the Court of Appeals, but it has never been relied upon to actually deny admission into evidence of a business entry record in a criminal case.[2] As a matter of fact, the Court of Appeals has insistently requested this Court to review our holding in *Lewis*.[3] We granted leave in this case to do so.

This case also raises an ancillary issue. Even if the records are admissible, does the defendant have the right to demand production of the physician contemporaneously examining the rape victim?

## I. —FACTS

On the evening of April 28, 1967 while complainant was returning home after work, she was robbed and raped near her apartment. After the attack complainant entered the apartment where she told her mother that she had just been raped. The police were called and conveyed complainant to Detroit Receiving Hospital where she was examined because of the rape.

At trial, a Dr. Wardell gave testimony as to the time and date of the admission to the emergency room of the hospital, the admission number and age of complainant at the time of the examination, apparently reading from the hospital record although the record itself was never introduced into evidence.

The counsel for the people continued:

---

[2] See part II.

[3] *See People v Kirtdoll*, 44 Mich App 237, 240–241; 205 NW2d 44 (1972); *People v Gauthier*, 28 Mich App 318, 337; 184 NW2d 488 (1970). *See also* 20 Wayne L Rev 406 (1974).

*"Q. (By Mr. Stevens, continuing):* Doctor, will you continue where we left off? What do the records show? What is your evaluation of the record?

\* \* \*

*"A.* That patient, Jeanette Taylor Ray, was examined for an alleged rape by a stranger. There were no injuries at that time but she complained of pain in her lower abdomen. Physical examination at that time revealed no injury except for lower abdominal tendons. There was a moderate vaginal Mucoid *[sic]* discharge and we usually do slide smears looking for sperms after a rape case is brought in. The slide revealed two to five sperms per high power field under the microscope. That means that the sperms are illuminated 10 times greater than the normal eye.

\* \* \*

*"Q.* \* \* \* And was she in fact treated at that hospital?

*"A.* Yes.

*"Q.* And what procedure is usually done as it relates to treatment, and in this case what was done?

*"A.* We always do a VDRL.

*"Mr. Horwitz [defendant's attorney]:* Well, I will object to what is usually done. What was done?

*"A.* This is always done.

*"The Court:* What,—was this done in this case?

*"A.* Yes.

*"The Court:* Very well.

*"Q. (By Mr. Stevens, continuing):* And other than sur, —was a surology test—

*"A.* We test.

*"Q.* —for blood?

*"A.* Yes, for syphilis. And we always clean the vaginal tract out with a syphilin douche, so if any sperms in there we wash them out, preventing pregnancy.

*"Q.* That was done in this case?

*"A.* Yes. Then we always give penecillin *[sic]*, 2.5 mill units, if the patient is not allergic to penecillin *[sic]*, which she was not. This is also to prevent any venereal disease if the individual accused of the alleged rape did have syphilis. And then we always give them stilbestrol,

which will flush anything out of the vaginal area and not allow implantation of the sperm.

"*Q.* This was done in this case?

"*A.* Yes.

"*Q.* Anything further that your records indicate, doctor?

"*A.* No.

"*Q.* Those are the official records of the hospital, is that right, doctor?

"*A.* That is right.

"*Q.* And these are the findings shown on those records?

"*A.* True.

"*Q.* One more question. How long was this young lady in the hospital during the time that the examination and those procedures were performed on her? How long did that take?

"*A.* Records show that she came in about 1:53 and the time out was 2:00 A.M.

"*Q.* All right. Are these slides and the high power field examination done in the hospital there?

"*A.* Yes.

"*Q.* Those are not sent outside?

"*A.* No.

"*Q.* Done there?

"*A.* In the laboratory."

Defendant was charged on July 26, 1967 with having on April 28, 1967 committed the crimes of rape and armed robbery. Indorsed on the information filed August 24, 1967 is the name "Milton G. Tarver" who examined and treated complainant at Receiving Hospital the night she was raped. Dr. Tarver's name also appears on the list of witnesses submitted by the police department dated August 11, 1967.

The trial was adjourned four times until it commenced on August 26, 1968. On this date, the prosecution called Dr. James Wardell to substitute for Dr. Tarver. The prosecution stated that the

substitution was sought since Dr. Tarver was "unavailable, transferred out of the State" and "[t]he last we heard he was in Ohio". The defense counsel objected on the ground that Dr. Tarver was the doctor indorsed on the information. The trial judge gave defense counsel 48 hours to try to determine the whereabouts of Dr. Tarver. The defendant, himself, continued to insist that Dr. Tarver be present even though his counsel felt that any competent member of the hospital staff was proper to come over and give testimony from the record.

On Wednesday, August 28, James Wardell was recalled as a witness. Defense counsel stated:

"Your Honor, earlier I objected to this witness giving testimony, because, as I understand it, he was not the examining physician at the Detroit General Hospital. I would still raise that objection."

The objection was duly noted and Dr. Wardell began his testimony.

Defendant was found guilty of rape, MCLA 750.520; MSA 28.788, and armed robbery, MCLA 750.529; MSA 28.797, and sentenced to a term of 15 to 30 years on each charge to run concurrently. The Court of Appeals reversed the conviction on both counts and remanded for a new trial on the basis of *Lewis* that the introduction of the doctor's testimony was error and was not harmless beyond a reasonable doubt. 44 Mich App 237; 205 NW2d 44 (1972). We granted prosecution's application for leave to appeal on April 20, 1973. 389 Mich 784.

## II. —HISTORY OF *LEWIS*

This Court has not had occasion to directly consider *Lewis* since the opinion was originally filed nearly 35 years ago. It has been twice cited in

footnotes and once in the text of our Court for the proposition that in a criminal case the accused has a right to be confronted by the witnesses against him. In none of the cases was it dispositive and in none of the cases was the issue related to the business entry statute. See *People v Hobson,* 369 Mich 189, 196; 119 NW2d 581 (1963); *People v Shirk,* 383 Mich 180, 189; 174 NW2d 772 (1970); *People v Mobley,* 390 Mich 57, 64–65; 210 NW2d 327 (1973).

The Court of Appeals has recognized *Lewis* but has not actually excluded any business records from evidence on its authority. In two criminal cases, *People v Wolke,* 10 Mich App 582; 159 NW2d 882 (1968) and *People v Parm,* 15 Mich App 303; 166 NW2d 536 (1968) it was held that while it was technical error, in light of *Lewis,* that business records were admitted into evidence, the error was not prejudicial since it was corroborated by other competent evidence and did not require reversal of the conviction. In two other criminal cases, *People v Herrera,* 12 Mich App 67; 162 NW2d 330 (1968) reversed on other grounds 383 Mich 49; 173 NW2d 202 (1970) and *People v Dickerson,* 30 Mich App 447; 186 NW2d 850 (1971) it was found that *Lewis* did not apply in cases where the defendant had sought to introduce the record, as in these cases the accused would not be concerned with confronting the maker of the record. A last pair of Court of Appeals criminal cases, *People v Flansburgh,* 24 Mich App 470; 180 NW2d 373 (1970) and *People v Lester,* 50 Mich App 725; 213 NW2d 793 (1973) distinguished *Lewis* in that the record did not directly prove that defendant had committed a crime. (This was also part of the rationale in *Parm, supra.)* All of the above cases shared one common precept in interpreting *Lewis*

regardless of how they distinguished it. "We believe that the limitations of the *Lewis* case were intended to apply to the particular facts of that case * * * ." *Herrera, supra,* 75.

The first Court of Appeals case, to make a frontal attack on *Lewis,* as opposed to factually distinguishing it, was *People v Gauthier,* 28 Mich App 318; 184 NW2d 488 (1970). The question in *Gauthier* was the admissibility of a handwritten message on a long-distance telephone call voucher. Such vouchers were ordinarily kept at a hotel's front desk in order that the clerk on duty might record the calls of the hotel's guests for appropriate billing. The importance of the voucher and the message written on it in this case was that it placed defendant at the scene of the murder of the hotel night clerk.

The Court of Appeals per presiding Judge J. H. GILLIS noted at the outset that *Lewis* stood firmly against the admission of business record hearsay in criminal cases. While noting the cases of *Wolke, supra,* and *Parm, supra* which actually distinguished *Lewis,* Judge GILLIS stated:

"We proceed here on the assumption that Justice WIEST's declaration is decisionally binding on this Court and that the Supreme Court did not intend its holding in *Lewis* to be limited to the facts of the case. However, on this appeal the people contend, and we agree, that *Lewis* was incorrectly decided. * * * We write in the hope that the *Lewis* rule will, on an appropriate record, be re-examined by its creating tribunal.". 28 Mich App 318, 321–322. (Footnote omitted.)

The Court of Appeals concluded that it was error under *Lewis* to admit the voucher as a business record but that the *Lewis* error was harmless beyond a reasonable doubt. The convic-

tion was affirmed. Leave to appeal was not granted. 384 Mich 812 (1971).

## III. —BUSINESS ENTRY STATUTE

The ultimate question for decision is whether *Lewis* is sound law today. But to properly consider that, we must in order look at the business entry statute, the *Lewis* decision and its rationale, the scope and purpose of the constitutional right of confrontation and finally examine the business entry statute in light of the purpose of the right of confrontation.

The business entry statute, 1961 PA 236, pertinently reads as follows:

"Any writing or record whether in the form of an entry in a book or otherwise, made as a memorandum of any act, transaction, occurrence or event *shall be admissible in evidence in all trials,* hearings and proceedings in any cause or suit in any court, or before any officer, arbitrators, or referees, in proof of said act, transaction, occurrence or event if it was made in the regular course of any business and it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence or event or within a reasonable time thereafter." MCLA 600.2146; MSA 27A.2146. (Emphasis added.)

The statute clearly allows business entries "in all trials". Nothing anywhere in the statute suggests business entries be treated differently in *criminal* trials from civil trials.[4] In a word, if business records cannot be introduced into evidence it cannot be on the basis of statutory inter-

---

[4] *See* MCLA 768.22; MSA 28.1045 which states in part:

"(1) The rules of evidence in civil actions, insofar as the same are applicable, shall govern in all criminal and quasi criminal proceedings except as otherwise provided by law."

pretation but must be on the basis of unconstitutionality.

## IV. —*LEWIS* DECISION

In deciding *Lewis* Justice WIEST pertinently wrote for this Court as follows:

"I find reversible error in admitting the hospital record without calling the maker thereof.

"In a criminal case the accused has a right to be confronted by the witnesses against him. Constitution of Michigan (1908), art 2, § 19. See *People v. Lambert,* 5 Mich. 349 (72 Am. Dec. 49) [1858]; *People v. Sligh,* 48 Mich. 54 [11 NW 782 (1882)]; *People v. Dow,* 64 Mich. 717 (8 Am. St. Rep. 873) [31 NW 597 (1887)]. This accords right of questioning." 294 Mich 684, 687.

\* \* \*

"The record was inadmissible and highly prejudicial.

\* \* \*

"Act No. 15, Pub. Acts 1935, amending 3 Comp. Laws 1929, § 14207 (Comp. Laws Supp. 1940, § 14207, Stat. Ann. § 27.902), relative to entries and writings made in the usual course of business, does not apply to criminal cases." 294 Mich 684, 688.

The omitted parts refer to the facts of the case and contain no *ratio decidendi.* The holdings of the cited cases are in order: a refusal to accept in evidence a certificate of a prior marriage signed by a minister not identified by address so as to have jurisdiction nor dated at the time of marriage and apparently not made at or near the marriage; refusal to accept in evidence testimony of a stenographer as to what a deceased witness said in another case without showing stenographer's minutes were correct; and refusal to accept weather records unless sworn to by the original maker.

## V. —IS *LEWIS* SOUND LAW TODAY?

*Lewis* was altogether correct in recognizing there is a right of confrontation but would today be incorrect in treating the right of confrontation as absolute.[5]

As Justice Stewart of the United States Supreme Court wrote in *Dutton v Evans,* 400 US 74, 80; 91 S Ct 210; 27 L Ed 2d 213 (1970):

"It is not argued, nor could it be, that the constitutional right to confrontation requires that no hearsay evidence can ever be introduced. In the *Pointer [v Texas,* 380 US 400, 407; 85 S Ct 1065; 13 L Ed 2d 923 (1965)] case itself, we referred to the decisions of this Court that have approved the admission of hearsay:

" 'This Court has recognized the admissibility against an accused of dying declarations, *Mattox v. United States,* 146 U. S. 140, 151 [13 S Ct 50; 36 L Ed 917 (1892)], and of testimony of a deceased witness who has testified at a former trial, *Mattox v. United States,* 156 U. S. 237, 240–244 [15 S Ct 337; 39 L Ed 409 (1895)]. See also *Dowdell v. United States, supra,* 221 U. S., at 330 [31 S Ct 590; 55 L Ed 753 (1911)]; *Kirby v United States, supra,* 174 U. S., at 61 [19 S Ct 574; 43 L Ed 890 (1899)]. * * * There are other analogous situations which might not fall within the scope of the constitutional rule requiring confrontation of witnesses.' "

Justice Cardozo also spoke to such limitations in *Snyder v Massachusetts,* 291 US 97, 107; 54 S Ct 330, 333; 78 L Ed 674 (1934). There he said:

---

[5] Some of the cases limiting the right of confrontation did exist at the time of *Lewis* but were not raised in that appeal. *See for example Hurd v People,* 25 Mich 405 (1872) which allowed dying declarations into evidence in criminal trials to impeach a witness; *People v Chambers,* 279 Mich 73; 271 NW 556 (1937), allowing statements of coconspirators into evidence; *Fisher v Kyle,* 27 Mich 454 (1873) which was a case of use of past recollection recorded in criminal trials; *People v Simpson,* 48 Mich 474; 12 NW 662 (1882) dealing with excited utterances in criminal cases.

"Nor has the privilege of confrontation at any time been without recognized exceptions, as, for instance, dying declarations or documentary evidence. * * * The exceptions are not even static, but may be enlarged from time to time if there is no material departure from the reason of the general rule."

See also *California v Green,* 399 US 149, 156; 90 S Ct 1930; 26 L Ed 2d 489 (1970) where the United States Supreme Court said:

"[M]erely because evidence is admitted in violation of a long-established hearsay rule does not lead to the automatic conclusion that confrontation rights have been denied."

That this Court has been aware that the United States Supreme Court recognized that the right of confrontation was subject to limitation in a proper case is evident from footnote 2 in now Chief Justice THOMAS M. KAVANAGH's opinion in *People v Shirk, supra,* in which this Court held that a confession of a codefendant could not be admitted in evidence in a joint trial because it would deny defendant the right of confrontation. In footnote 2, now Chief Justice KAVANAGH said:

"As stated by the United States Supreme Court in *Salinger v. United States* (1926), 272 US 542 (47 S Ct 173, 71 L Ed 398):
" 'The right of confrontation did not originate with the provision in the Sixth Amendment, but was a common-law right having recognized exceptions. * * * '
"For this Court's view on this subject see, *e.g., * * * People v Lewis* (1940), 294 Mich 684, 687. * * * " 383 Mich 180, 189.

In arguing against the *Lewis* decision, Wayne State University Law Professor Josephson in the Wayne Law Review annual survey of 1971 Michigan appellate decisions, "Civil and Criminal Evi-

dence" 18 Wayne L Rev 101, 115 (1972) refers to other hearsay examples recognized by this Court:

"The position that the use of hearsay evidence in a criminal trial would conflict with the constitutional right of confrontation is feasible but the *Lewis* case singles out business records, leaving unaffected other forms of hearsay admissible in criminal cases under statutory or common law exceptions. Michigan courts consistently admit hearsay as substantive evidence in criminal cases if the hearsay can be considered a dying declaration, past recollection recorded, vicarious admission, official public record, prior recorded testimony, or an excited utterance. Confrontation problems exist in all of the aforementioned situations and no reasonable explanation for the business record aberration has ever been given by the Supreme Court."

The greatest illumination in the Michigan cases as to reasons for such limitation to the right of confrontation is found in *People v Hobson,* 369 Mich 189; 119 NW2d 581 (1963) which was a criminal case that dealt with past recollection recorded. In dissenting, Justice SOURIS discussed two reasons why the right of confrontation may be limited to admit certain hearsay evidence: necessity and trustworthiness. Justice SOURIS for himself, now Chief Justice KAVANAGH and Justice OTIS SMITH pertinently wrote:

"It may be suggested that such denial or restriction of defendant's rights of cross-examination is no different from, nor greater than, the denial of cross-examination whenever evidence is admitted in a criminal trial as one of the exceptions to the hearsay rule, such as, for example, dying declarations, shop book entries, official reports, et cetera. Whatever the constitutional sanction * * * , evidence admitted as within the hearsay exceptions is generally limited to that which is necessary, absent availability of the evidence from the declarant himself, and where the probability of its trustworthi-

ness is high, based upon a showing of the declarant's motivation and his ability to perceive, remember and narrate. * * *

"On the other hand, the rule by which past recollection recorded is admitted in evidence is not limited to evidence which is *inherently* trustworthy." 369 Mich 189, 200.

\* \* \*

"Unlike exceptions to the hearsay rule, such as shop book entries, autopsy reports and the like, this exhibit does not have the protective characteristic of trustworthiness found in records and documents prepared for other use and only incidentally found pertinent to litigation." 369 Mich 189, 202.

Justice SOURIS' emphasis on trustworthiness is well placed when one considers the origin and purpose of the right of confrontation.

In *California v Green,* 399 US 149, 156–157; 90 S Ct 1930; 26 L Ed 2d 489 (1970),[6] Justice White comments succinctly on the origin of the right to confrontation:

"The origin and development of the hearsay rules and of the Confrontation Clause have been traced by others and need not be recounted in detail here. It is sufficient to note that the particular vice that gave impetus to the confrontation claim was the practice of trying defendants on 'evidence' which consisted solely of *ex parte* affidavits or depositions secured by the examining magistrates, thus denying the defendant the opportunity to challenge his accuser in a face-to-face encounter in front of the trier of fact. Prosecuting attorneys 'would frequently allege matters which the prisoner denied and called upon them to prove. The proof was usually given by reading depositions, confessions of accomplices, letters, and the like; and this occasioned frequent demands by the prisoner to have

---

[6] This case admitted "a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination". 399 US 149, 158.

his "accusers," *i.e.,* the witnesses against him, brought before him face to face. * * * ' " (Footnotes omitted.)

This historical purpose was translated to the question of whether the admission of business records under the Federal statute,[7] which is similar to Michigan's, violates the right of confrontation in *Kay v United States,* 255 F2d 476, 480–481 (CA 4, 1958) as follows:

"Admission of the certificate did not deprive the defendant of his right of confrontation by witnesses. Neither the Sixth Amendment to the Constitution of the United States nor Article I, Section 8 of the Constitution of Virginia can be said to have incorporated the rule against hearsay evidence, as understood at the time of their adoption. Each was intended to prevent the trial of criminal cases upon affidavits, not to serve as a rigid and inflexible barrier against the orderly development of reasonable and necessary exceptions to the hearsay rule.

"The power of the Congress and of a state legislature to provide for the admission of evidence is not subject to any such arbitrary limitation as the defendant supposes. They may carve out a new exception to the hearsay rule, without violating constitutional rights, where there is reasonable necessity for it and where it is supported by an adequate basis for assurance that

---

[7] 28 USCA § 1732(a) states,

"In any court of the United States and in any court established by Act of Congress, any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of such act, transaction, occurrence, or event, if made in regular course of any business, and if it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter.

"All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but such circumstances shall not affect its admissibility.

"The term 'business,' as used in this section, includes business, profession, occupation, and calling of every kind."

the evidence has those qualities of reliability and trust-
worthiness attributed to other evidence admissible un-
der long established exceptions to the hearsay rule. See
*Tot v. United States,* 319 U.S. 463, 63 S. Ct. 1241, 87 L.
Ed. 1519 [1943]; *United States v. Leathers,* 2 Cir., 135
F.2d 507 [1943]; *Matthews v U. S.,* 5 Cir., 217 F.2d 409
[1954]."

Judge Augustus Hand, in the *United States v
Leathers,* 135 F2d 507, 511 (CA 2, 1943), referred
to in *Kay, supra,* approved the admission of busi-
ness records as a limitation of the right of confron-
tation very succinctly by saying:

"We think that business records kept as a matter of
ordinary routine are often likely to be more reliable
than dying declarations."

However, to overrule a prior precedent of this
Court, we perhaps need to dig a little deeper into
the matter. The evil the right of confrontation
sought to avoid was prosecution by means of *ex
parte* affidavits, which would be of uncertain relia-
bility. This was particularly so when the *ex parte*
affidavits were made especially for a given case. In
such cases the right of cross-examination would
have been most helpful in an effort to establish the
truth. So it would appear that the right to confron-
tation was seen as a means, albeit a vital, effective
and important means, to the end of achieving
truth rather than the end itself.

Consequently where in the exceptional case the
end of truth seemed as well served by another
trustworthy rule, the right of confrontation was
limited to accommodate that rule as serving the
same end. Dying declarations, of course, fall into
that category.

Business entries made in the regular course of
business obviously are not in the same questiona-

ble class as *ex parte* affidavits made for a particular lawsuit. Rather they are carefully made in an entirely different context and for the purpose of trustworthy records on which business affairs can be reliably conducted.[8] This is especially true of hospital records which may involve life or death.[9]

---

[8] One of the factors considered to offset the lack of the recognized counterweights to hearsay evidence—oath, confrontation and cross-examination—is the trustworthiness of the record. *(See* fn 9 as to the other factor of necessity.) Wigmore states:

"The theory of the Hearsay rule is that the many possible sources of inaccuracy and untrustworthiness which may lie underneath the bare untested assertion of a witness can best be brought to light and exposed, if they exist, by the test of cross-examination.

\*   \*   \*

"There are many situations in which it can be easily seen that such a required test would add little as a security, because its purposes had been already substantially accomplished. If a statement has been made under such circumstances that even a skeptical caution would look upon it as trustworthy (in the ordinary instance), in a high degree of probability, it would be pedantic to insist on a test whose chief object is already secured. Supposing that such a situation exists, the statement could properly be received, especially if no other evidence from that person was now available. The law of evidence properly assumes that such situations can and do exist, and the exceptions to the Hearsay rule are concerned with defining them." 5 Wigmore, Evidence (3d ed), § 1420, pp 202, 203.

[9] As to hospital records in particular, Wigmore states:

"There is a Circumstantial Guarantee of Trustworthiness *(ante,* § 1422); for the records are made and relied upon in affairs of life and death. Moreover, amidst the day-to-day details of scores of hospital cases, the physicians and nurses can ordinarily recall from actual memory few or none of the specific data entered; they themselves rely upon the record of their own action; hence, to call them to the stand would ordinarily add little or nothing to the information furnished by the record alone. The occasional errors and omissions, occurring in the routine work of a large staff, are no more an obstacle to the general trustworthiness of such records than are the errors of witnesses on the stand. And the power of the Court to summon for examination the members of the recording staff is a sufficient corrective, where it seems to be needed and a bona fide dispute exists." 6 Wigmore, *supra,* § 1707, p 36.

McCormick shares this opinion. He states:

"The safeguards of trustworthiness, however, of the records of a modern hospital are at least as substantial as the guaranties of reliability of the records of business establishments. With the progress in the science and skills of medicine and surgery goes a corresponding improvement and standardization of the practice of recording the

The Legislature in passing the business entry statute recognized that certain but not all entries in business records are trustworthy enough, when appropriately identified by a qualified record keeper, to be admitted in evidence without the right to cross-examine the actual maker of that record. This selectivity on the part of the Legislature both indicates its concern for and helps se-

facts about the patient—facts upon which the treatment of the patient, and hence his health and often his life, may depend." McCormick, Evidence (1954), § 290, p 609. (Footnote omitted.)

In *Globe Indemnity Co v Reinhart*, 152 Md 439, 446–447; 137 A 43 (1927) these forceful observations were made:

"The question here presented is whether evidence represented by the hospital chart contains a sufficient guarantee of its truthfulness. We are of the opinion that it does. It is a record required by the hospital authorities to be made by one whose duty it is to correctly make the entries therein contained. So far as the hospital is concerned, there could be no more important record than the chart which indicates the diagnosis, the condition, and treatment of the patients. This record is one of the important advantages incident to hospital treatment, for it not only records for the use of the physician or surgeon what he himself observes during the time he is with the patient, but also records at short intervals the symptoms, condition, and treatment of the patient during the whole time of the physician's absence. Upon this record the physician depends in large measure to indicate and guide him in the treatment of any given case. Long experience has shown that the physician is fully warranted in depending upon the reliability and trustworthiness of such a record. It is difficult to conceive why this record should not be reliable. There is no motive for the person, whose duty it is to make the entries, to do other than record them correctly and accurately. On the other hand, there is the strongest reason why he should: First, because of the great responsibility, he knowing that the treatment of the patient depends largely upon this record, and if it be incorrect it may result, and probably will result, in the patient's failure to receive proper surgical or medical treatment, which failure might be followed by serious consequences or even death. Second, the entrant must realize and appreciate that his position is dependent upon the accuracy with which the record is made. Third, as was stated by Tindall, C. J., in *Poole v Dicas*, 1 Bing. N. C. 649 [1835]: 'It is easier to state what is true than what is false; the process of invention implies trouble in such a case unnecessarily incurred.' "

See also *Admissibility of Hospital Records Into Evidence*, 21 Md L Rev 22, 26 (1961); *Evidence-Admissibility of Hospital Records*, 37 Albany L Rev 579, 580 (1973); Comment, 36 U Cinc L Rev 734, 736 (1967); *Hospital Records as Evidence*, 14 S Cal L Rev 99, 100–101 (1941); *Evidence-Admissibility of Hospital Records as Business Entries*, 38 Mich L Rev 219, 221 (1939).

cure the trustworthiness of the records.

The importance and significance of this selectivity has been recognized by this Court. The leading case deals with the admissibility of hospital records in a death and survival acts case, *Gile v Hudnutt*, 279 Mich 358; 272 NW 706 (1937). The hospital records had been totally excluded. We admitted them quoting with approval a New York case which permitted showing date of entry and discharge, the fact of treatment but denied showing the diagnosis. We then went on to say:

"As will be seen, the act contains its own limitations. It limits the admissibility of such records to any act, transaction, occurrence or event made in the regular course of any business where it was the regular course of such business to make such record at the time of such act, transaction, occurrence or event or within a reasonable time thereafter. We withhold discussion of specific questions which may arise but are not presented to us in the instant case." 279 Mich 358, 367.

In *Sadjak v Parker-Wolverine Co*, 281 Mich 84, 87; 274 NW 719 (1937), the Workmen's Compensation Commission gave consideration in the hospital record of a diagnosis of "acute alcoholism, possible skull fracture" and a statement decedent had fallen from a ladder. This Court held this material inadmissible saying:

"What decedent told the hospital authorities did not refer to any act, transaction, occurrence, or event in the hospital treatment. The portion of the record thus objected to was pure hearsay and of no evidentiary force and inadmissible." 281 Mich 84, 87.

See also *Valenti v Mayer*, 301 Mich 551; 4 NW2d 5 (1942); *In re Nickel's Estate*, 321 Mich 519; 32 NW2d 733 (1948); *Case v Vearrindy*, 339

Mich 579; 64 NW2d 670 (1954). See also *Evidence-Scope of the Business Entry Exception to the Hearsay Rule Under Present Statutory Modification,* 46 Mich L Rev 802, 806–807 (1948); Comment, 44 Mich L Rev 453, 455 (1945); 38 Mich L Rev 219, 222, 226–227 (1939); *Revised Business Entry Statutes: Theory and Practice,* 48 Colum L Rev 920, 929 (1948); 14 S Cal L Rev 99, 106–107 (1941); 21 Md L Rev 22, 36 (1961); 37 Albany L Rev 579, 581–584 (1973). But see *Shinabarger v Phillips,* 370 Mich 135, 141–142; 121 NW2d 693 (1963).

See also, then Judge LEVIN, concurring in *Fisher v Hatcher,* 44 Mich App 541, 548; 205 NW2d 913 (1973) where he said, "[s]o that trustworthy evidence of probative value is not denied admission, it would be appropriate to re-examine existing precedent."

To summarize, the business entry statute as enacted by the Legislature and interpreted in civil cases carefully secures the trustworthiness of the material admissible into evidence. As a consequence, there is reasonable assurance that only the truth will be presented in evidence and that the safeguard of cross-examination is not necessary to assure the truth.

In addition to trustworthiness the limitations to the right of confrontation have generally included the element of necessity.[10] The necessity in the case of the business entry statute is the avoidance of breakdown in business operations by calling

---

[10] Again Wigmore states:

"But this test or security may in a given instance be superfluous; it may be sufficiently clear, in that instance, that the statement offered is free enough from the risk of inaccuracy and untrustworthiness, so that the test of cross-examination would be a work of supererogation. Moreover, the test may be impossible of employment—for example, by reason of the death of the declarant—so that, if his testimony is to be used at all, there is a necessity for taking it in the untested shape." 5 Wigmore, Evidence (3d ed), § 1420, p 202. *See also* 21 Md L Rev 22, 27–28 (1961).

away a person or persons from critical work to verify records that may speak for themselves, especially when those records can be equally effectively identified by another person.[11] See 6 Wigmore, Evidence (3d ed), § 1707, p 36.

From the foregoing analysis, both of the origins and purpose of the right of confrontation and analogizing business records to already accepted hearsay evidence limitations to the right of confrontation, we hold that records admissible in evidence under the business entry statute are admissible in criminal as well as civil cases. We overrule *Lewis* insofar as it is in conflict with this holding.

## VI. — *KIRTDOLL* RULE & OTHER JURISDICTIONS

The rule we announce today is the accepted rule in the Federal courts. We have already quoted from them in development of our own rationale. *Kay v United States, supra; United States v Leathers, supra.*

While relatively few states have spoken out on the issue of business records and the right of confrontation, the preponderant majority adopt

---

[11] This leads to the question of setting the foundation for the admissibility of the record. Given this presumption of trustworthiness and recognized necessity, it would seem that the record would be admissible by proving only the things set forth in the act; that the record was made of an act, transaction, occurrence or event; that it was made in the regular course of a business, and it was the regular course of such business to make the record; that it was made at the time of or shortly after the happening of the act, transaction, occurrence or event. The terms of the statute do not demand that the maker be produced to lay the foundation, or that his or her unavailability be accounted for. Nor does it have to be shown that the maker had personal knowledge of the facts in the record before it is admissible. It would seem that there is no reason why any person connected with a hospital and who is familiar with its procedures of hospital record-keeping could not make the authentication of the record.

the same rule as we do. Four states with similar business entry statutes have reached the same result.[12] These states are Connecticut, Maryland, Missouri and Wyoming. In addition, Massachusetts holds that the admission of hospital records under a special hospital records statute does not violate the right of confrontation *(Commonwealth v Franks,* 359 Mass 577; 270 NE2d 837 [1971]) and New York holds the admission of a coroner's records does not violate the right of confrontation *(People v Nisonoff,* 293 NY 597; 59 NE2d 420 [1944]). See also *People v Purcell,* 22 Cal App 2d 126; 70 P2d 706 (1937).

The only case holding directly and specifically contrary to the rule we adopt today is *State v Tims,* 9 Ohio St 2d 136; 224 NE2d 348 (1967),[13]

---

[12] *CONNECTICUT: State v Hayes,* 127 Conn 543; 18 A2d 895 (1941) (admission of bank records in fraud case—relied on following the next more fully reasoned case involving public records). *State v Torello,* 103 Conn 511; 131 A 429 (1925) (admission of state chemist's records in liquor sale case).

*MARYLAND: Jones v State,* 205 Md 528; 109 A2d 732 (1954) (admission of hospital records; reliance on Justice Cardozo, *Snyder v Massachusetts, supra).*

*MISSOURI: State v Durham,* 418 SW2d 23 (Mo, 1967) (admission of hospital records in rape case).

*WYOMING: Jarrett v State,* 500 P2d 1027 (Wyo, 1972) (admission of hospital records in murder case).

[13] In 36 Cinc L Rev 734 (1967), *State v Tims,* 9 Ohio St 2d 136; 224 NE2d 348 (1967) was evaluated. *Tims* (a rape case) is the only case which has followed the *Lewis* rationale in restricting the use of hospital records based on the confrontation rationale. *Tims* concluded that the defendant accused of committing the rape would be severely prejudiced if he could not confront the doctor who made the record. The law review comment answered:

"Although confrontation is a fundamental right guaranteed by the Constitution, the exercise of that right should not result in the court discarding in criminal proceedings a highly useful rule of evidence. In *Tims,* there was a substantial probability that the accused would not have been benefited by confronting the examining physician in court.

\* \* \*

"The *Tims* decision should not be used to exclude a business record from evidence where it can be shown that the person who made the record is not available. Otherwise, a blanket exclusion of all business

which is a rape case specifically relying on *Lewis.*
However, *State v Guaraneri,* 59 RI 173, 181–182;
194 A 589 (1937) at least partially supports *Lewis,*
although it said that the introduction of hospital
records did not violate the confrontation right as
"the constitution does not alter the rules of evi-
dence" and it has been cited as a limitation on the
right of confrontation. *Jones v State, supra. Guar-
aneri* requires the maker of the record "if living,
competent and within the jurisdiction, must tes-
tify" (59 RI 173, 177); *Lewis* requires "calling the
maker", *supra,* 687.

A number of other states have admitted busi-
ness records either under a somewhat different
statute and/or without discussing the right of
confrontation.[14]

To repeat the preponderant majority of our
sister states as well as the Federal courts support
the rule we adopt in this opinion.

The text and law review writers appear to uni-
formly support the ruling we make today. Mc-
Cormick, *supra,* states:

records from criminal trials would exclude reliable evidence which is,
in some cases, the only evidence available. Moreover, it is possible
that a blanket exclusion could be applied to other hearsay exceptions,
such as dying declarations, spontaneous declarations, pedigree and
family history, and reputation of character, which are now admitted
into evidence even though the witness is unavailable." 36 Cinc L Rev
734, 737–738.

[14] *DELAWARE* —Uniform Act, 10 Del C § 4310; *Johnson v State,*
253 A2d 206 (Del, 1969) (larceny).

*NEW JERSEY* —Uniform Act, NJSA 2A:82–34 to 2A:82–37; *State v
Gardner,* 51 NJ 444; 242 A2d 1 (1968) (murder).

*NORTH DAKOTA* —Uniform Act, 1943 NDRC § 31-0801; *State v
Ramstad,* 87 NW2d 736, 741 (ND, 1958) (removing, concealing, selling
or disposing of property subject to a lien).

*OREGON* —Uniform Act, ORS 41.680–41.690; *State v Roisland,* 1 Ore
App 68; 459 P2d 555 (1969) (assault with a dangerous weapon).

*PENNSYLVANIA* —Uniform Act, 28 PS § 91a–d; *Commonwealth v
Harris,* 351 Pa 325; 41 A2d 688 (1945) (murder).

*TEXAS* —Uniform Act, Vernon's Ann Civ Stat Art 3737e §§ 1–6;
*Roddy v State,* 494 SW2d 174 (Tex Crim App, 1973) (rape).

"Do the confrontation provisions in state and Federal constitutions limit the use for the prosecution of hearsay declarations falling within the exceptions to the hearsay rule? This was once a matter of doubt but it has now been established for a hundred years that those exceptions which were accepted when these provisions were included in the earliest American constitutions were not intended to be abrogated. Most if not all of the common-law exceptions were so accepted by the 1780's. Accordingly the prosecution's use of dying declarations, official written statements, and regular entries in the course of business is frequent and approved. There seems no reason to doubt that the other traditional exceptions as developed and liberalized by judicial decisions should be similarly treated. New statutory liberalizations of the hearsay exceptions should likewise, it seems, meet with no obstacle from these provisions, so long as the traditional bases for the hearsay exceptions, namely that hearsay may be admitted when it is (a) specially needed and (b) specially trustworthy, are preserved in the statutory extensions." Section 231, pp 486–487. (Footnotes omitted.)

Professor Wigmore, *supra,* described the confrontation right as not absolute. He stated:

"Moreover, this right of cross-examination thus secured was *not a right devoid of exceptions.* The right to subject opposing testimony to cross-examination is the right to have the Hearsay rule enforced; for the Hearsay rule is the rule requiring cross-examination *(ante,* § 1362). Now the Hearsay rule is not a rule without exceptions; there never was a time when it was without exceptions. There were a number of well-established ones at the time of the earliest constitutions, and others might be expected to be developed in the future. The rule had always involved the idea of exceptions, and the constitution-makers indorsed the general principle merely as such.  * * *  The rule [confrontation] sanctioned by the Constitution is the Hearsay rule as to cross-examination, with all the exceptions that may legitimately be found, developed, or created therein." Section 1397, pp 130–131.

See also the Comment, *Revised Business Entry Statutes: Theory and Practice,* 48 Colum L Rev 920, 926, n 45 (1948) which calls the confrontation rationale of *Lewis* an "anomolous restriction [which] seems wholly unwarranted in view of the fact that confrontation has never been required where evidence is admitted by virtue of any of the common law exceptions to the hearsay rule."

And see *Admissibility of Hospital Records Into Evidence,* 21 Md L Rev 22, 24 (1961) where it was stated:

"It has been argued that the production of a hospital record * * * violates the defendant's right to confrontation * * * . It is true that there is a lack of confrontation present, as in all hearsay declarations; however, it has generally been held that the admission of such matter does not abridge any constitutional guarantees."

## VII. —NON-PRODUCTION OF ATTENDING DOCTOR

While we overrule the *Lewis* requirement that hospital records admissible under the business entry statute may not be put into evidence without the testimony of the attending physician in a criminal case, we still must address the claim that the attending physician was an indorsed witness and was not produced.

Dr. Tarver was an appropriately indorsed witness as the attending physician in a rape case. Proof of rape requires the showing of penetration. *People v Inman,* 315 Mich 456; 24 NW2d 176 (1946). And in addition, proof of rape requires the showing of use of force where the woman is past the age of consent. *Don Moran v People,* 25 Mich 356; 12 Am Rep 283 (1872). The attending physician just after the commission of the rape is

normally the best witness to these facts. In fact attending physicians have even been designated as res gestae witnesses. *People v Dickinson,* 2 Mich App 646; 141 NW2d 360 (1966); *People v Kelly,* 30 Mich App 154; 186 NW2d 72 (1971); *People v Crable,* 33 Mich App 254; 189 NW2d 740 (1971).

The physician attending the victim immediately after a rape case is in a position to testify to the victim's condition beyond what the record may show or beyond what is admissible under the business entry statute. Certainly the physician's posture in the case is quite different from a book-keeper, for example, who may only be entering credits and debits in the normal course of business.

"Due diligence must be shown by the prosecutor to produce witnesses whose names are indorsed on the information * * * ." *People v Zabijak,* 285 Mich 164, 171; 280 NW 149 (1938).

In this case, Dr. Tarver was indorsed. However, he was not produced, the excuse being he had quit the jurisdiction. This is no longer sufficient excuse. *People v Tees,* 386 Mich 483; 192 NW2d 241 (1971).

## VIII. —CONCLUSION

In this opinion we overrule the *Lewis* holding that hospital records cannot be admitted in a criminal case "without calling the maker thereof" and hold that the hospital records could have been properly admitted in this case under the business entry statute.[15] This error was in defendant's favor

---

[15] We do not pass upon the admissibility of the particular entries in the instant record as it never was introduced into evidence. We do note, however, that the trial courts should be aware of the two hurdles of admissibility.

"The courts have shown a tendency to overlook this elementary but important distinction in cases involving business records. They have indicated either that records containing volunteer hearsay should be

and, since there was conviction, is immaterial, unless there is a new trial. We further hold that the examining physician in this rape case was an appropriately indorsed witness and that the state did not exercise sufficient effort in producing him. This is reversible error.

In this case, however, defendant was convicted on two counts. One for robbery armed, one for rape. He was sentenced separately on each with the same sentence to run concurrently.

The errors in this case all relate to the rape count and have no connection with the robbery count. So normally we would reverse the rape count and affirm the robbery count. *People v Taylor,* 386 Mich 204; 191 NW2d 310 (1971). See 5 Am Jur, Appeal and Error, § 953, p 380. The Court of Appeals recognized this but said the inadmissible evidence went to the crucial question of complainant's credibility and as a consequence affected the credibility of her statements on the robbery armed

---

excluded for all purposes, or, conversely, that if admissible for any purpose, they should be admissible for all. Both approaches reflect unsound analysis of the statute." (Footnotes omitted.) 48 Colum L Rev 920, 928 (1948).

*See also* 21 Md L Rev 22, 36 (1961) where it was stated:

"It has been indicated by some cases that the hospital record need only satisfy the business records rule in order to make all of the matters contained therein admissible, thus not requiring that double hearsay entries be treated specially. However, the weight of authority, and of reason, is contrary. Thus, although the admissibility of the record itself is determined solely by the business records exception, for the entries contained therein to satisfy that exception by being a proper part of the record, many of the important ones must themselves satisfy one of the other exceptions." (Footnotes omitted.)

Thus first the record itself must qualify under the business entry statute. Second, the particular entries sought to be admitted must themselves be admissible either within the language of the statute as an act, transaction, occurrence or event made in the course of business or as a separate exception to the hearsay rule. If some portions of the hospital record are found admissible and other portions inadmissible, the record can be broken down for purposes of admitting part and excluding·part. *Henson v Veterans Cab Co of Flint,* 384 Mich 486, 495; 185 NW2d 383 (1971).

as well as the rape. They therefore ordered reversal as to both counts.

We hold that the record was admissible and as a consequence the complainant's credibility would have been corroborated. The question remains does the failure to produce Dr. Tarver taint the robbery armed count. We hold it does not.

The Court of Appeals (as it wished) is reversed. The rape conviction is reversed, but the robbery armed conviction is affirmed. The defendant remains sentenced to a term of imprisonment from 15 to 30 years on the count of robbery armed.

T. M. KAVANAGH, C. J., and SWAINSON and M. S. COLEMAN, JJ., concurred with WILLIAMS, J.

T. G. KAVANAGH, J., concurred in the result.

LEVIN and J. W. FITZGERALD, JJ., did not sit in this case.