PEOPLE v HURST

1. ESCAPE—DEFENSES—UNLAWFUL INCARCERATION—BURDEN OF PROOF —PROSECUTORS.

A conviction of prison escape will not be sustained where the incarceration was unlawful, but the legality of the confinement must be raised by the defendant at trial on the escape charge as a matter of defense, and there is no requirement of the prosecution to prove lawfulness where the issue is not raised.

2. EVIDENCE—CRIMINAL LAW—BUSINESS RECORDS RULE—ESCAPE—UN-LAWFUL CONFINEMENT—JUDGMENT OF SENTENCE.

The business records evidence rule applies to criminal as well as civil cases; and, therefore, a certified copy of defendant's judgment of sentence is admissible as a business record in a trial for prison escape wherein defendant claims unlawful confinement (MCLA 600.2146).

3. CRIMINAL LAW—SENTENCING—SENTENCE CREDITS—PERSONS SERV-ING TIME.

Credit for time spent in prison between arraignment and sentencing will not be given to persons who are already serving time in prison for conviction on a prior charge.

4. APPEAL AND ERROR—SENTENCE CREDITS—ERRONEOUS CREDITS—IN-CREASED SENTENCES—CONVICTS—REDUCTION OF SENTENCE—RE-VERSAL.

An erroneous grant of credit by the trial court for time served between arraignment and sentencing to one already serving a sentence for a prior conviction should be corrected by the appellate court by a reduction of the sentence, where it can be determined from the record that the trial court increased the sentence because of the error and by a reversal where the true intention of the trial court is not apparent from the record.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 27 Am Jur 2d, Escape, Prison Breaking and Rescue § 7 *et seq.* What justifies escape. 70 ALR2d 1430.

[2] 27 Am Jur 2d, Escape, Prison Breaking and Rescue § 19.

[3] 60 Am Jur 2d, Penal and Correctional Institutions §§ 62, 63.

[4] 21 Am Jur 2d, Criminal Law §§ 536, 570, 571.

Appeal from Jackson, George W. Britten, J. Submitted Division 2 February 12, 1975, at Lansing. (Docket No. 19328.) Decided March 11, 1975.

Rufus Hurst was convicted of prison escape. Defendant appeals. Affirmed but remanded for resentencing.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Bruce A. Barton,* Prosecuting Attorney, and *James M. Justin,* Assistant Prosecuting Attorney, for the people.

*Norris J. Thomas, Jr.,* Assistant State Appellate Defender, for defendant.

Before: ALLEN, P. J., and T. M. BURNS and R. M. MAHER, JJ.

ALLEN, P. J. This appeal involves the issue of first impression of whether "lawful" confinement is an element of the Michigan prison escape statute, MCLA 750.193; MSA 28.390, which must be proven by the prosecution, or whether the defendant must raise "illegal" confinement as a defense. It is not disputed that on June 12, 1973, and for some time prior thereto, defendant was confined at the Dalton farm barracks at Jackson Prison, that he escaped on the night of June 12, 1973, and was apprehended at a private home the morning of June 13. He was tried by jury, found guilty, and, on December 6, 1973, sentenced to a consecutive term of 1-1/2 years, with 177 days credit for time served in Jackson Prison between arrest and sentencing.

At trial, the prosecution attempted to establish the lawfulness of defendant's confinement on June 12, 1973, by introducing in evidence a certified

copy of defendant's judgment of sentence, commonly called a mittimus. It would have shown lawful confinement. The prosecutor's theory was that the mittimus was admissible under the business entry rule, MCLA 600.2146; MSA 27A.2146, the certified copy of sentence provision, MCLA 800.50; MSA 28.1419, and MCLA 600.2106; MSA 27A.2106, allowing for the admission of certified copies of court orders, judgments, and decrees into evidence. The trial judge disallowed the evidence, relying upon *People v Lewis,* 294 Mich 684; 293 NW 907 (1940), which held that the business records rule only applied to civil cases.[1] Defense counsel made no claim that defendant was wrongfully incarcerated or that he was ever given permission to leave prison grounds. Instead, at the conclusion of the people's proofs, counsel moved for a directed verdict for defendant on the ground that legal confinement was an element of the offense charged and had not been proved. The motion was denied.

Michigan's present escape law, the pertinent parts of which are set forth below.[2] does not make

---

[1] *People v Kirtdoll,* 391 Mich 370; 217 NW2d 37 (1974), decided after the trial in this case, overruled *People v Lewis, supra,* and held that the business records rule applied to criminal as well as civil cases.

[2] MCLA 750.193; MSA 28.390:

"(1) Any person, being imprisoned in any prison of this state for any term, who shall break prison and escape, or break prison though no escape be actually made, or shall escape, or shall leave the prison without being discharged from the prison by due process of law, or shall attempt to break prison or escape therefrom, shall be guilty of a felony, punishable by further imprisonment for not more than 5 years, such term of further imprisonment to be served after termination, pursuant to law, of any sentence or sentences then being served.

\* \* \*

"(2) The word 'prison' as used in this section shall include any Michigan state prison, penitentiary, reformatory, state house of correction, camp constructed and maintained under the provisions of Act No. 274 of the Public Acts of 1949, as amended, being section 798.351 of the Compiled Laws of 1948, or any penal camp, except probation

the lawfulness of confinement an element of the offense. This is in contrast to an earlier Michigan statute defining the offense of aiding or facilitating the escape "of any prisoner there lawfully committed or detained".[3] It is in contrast to the Federal prison escape statute defining the offense as escape from confinement "on a charge of felony, or conviction of any offense". 18 USCA 751.[4] It is in contrast with a few state statutes whose language mandates a showing of lawful conviction.[5] Citing *People v Hamaker,* 92 Mich 11; 52 NW 82 (1892), and other cases cited in the footnotes 4 and 5, defendant contends the burden of proof is on the prosecution. Obviously, these cases are distinguishable since each contains language which, unlike MCLA 750.193; MSA 28.390, expressly makes lawfulness of confinement an element of the offense. Defendant has cited no case which holds that the prosecutor must prove legal confinement as part of the offense where the statute under which defendant was charged, like Michigan's, omits language of lawful confinement. The implication of *Hamaker, supra,* is that had the statute omitted the words "prisoner there lawfully committed or detained" proof of the legality of the incarceration would not have been an element of the corpus delicti:

"If any force is to be given to the language employed in How Stat § 9245, 'lawfully committed or detained',

camps or probation recovery camps, and shall further include the grounds, farms, shops, road camps or places of employment operated by such institution or under control of the officers thereof * * * ."

[3] The statute involved was How. Stat. § 9245 and was discussed and interpreted in *People v Hamaker,* 92 Mich 11; 52 NW 82 (1892).

[4] This statute was interpreted in *Mullican v United States,* 252 F2d 398 (CA 5, 1958) and *Strickland v United States,* 339 F2d 866 (CA 10, 1965).

[5] *State v Jordan,* 247 NC 253; 100 SE2d 497 (1957).

then the information under which the respondent was convicted fails to state any offense. We think that force must be given to these words; that in creating the statutory offense—to aid or facilitate the escape of a prisoner from jail or prison—the Legislature intended the offense to be complete only on condition that the person thus aided or whose escape was facilitated was there lawfully committed or detained." 92 Mich 11, 16.

It is true that a defendant cannot be convicted of the crime of prison escape if his incarceration is unlawful. *People v Alexander,* 39 Mich App 607; 197 NW2d 831 (1972). But this does not answer the question of whether the prosecution must prove lawfulness as part of its case or whether it is an issue for the defendant to raise. Without expressly so deciding, *Alexander, supra,* implies it is a matter for the defendant to raise. In that case, the defendant took the stand on his own behalf and attempted to show that under the proper method of computing dead time, his sentence would have expired prior to his escape. On appeal, he attached to his brief a certificate of discharge purporting to show such fact. Our Court stated:

"It is our opinion that defendant should not have been prosecuted for the crime of escape if at the time he left prison he was illegally incarcerated. We do not have, however, sufficient information to determine whether or not defendant was in fact being unlawfully incarcerated at the time of his escape although defendant has attached to his brief what appears to be a certificate of discharge which provides that defendant's sentence would terminate on April 1, 1970. It would, therefore, appear that there is some basis for defendant's claim.

"Since the issue was not properly litigated below, we are remanding for a determination of the legality of defendant's incarceration." 39 Mich App 607, 611.

Prisons, unlike inns and hotels, admit their guests only upon receipt of highly qualified credentials. It is reasonable to conclude that the Legislature, knowing that persons are not incarcerated without documentation therefor, deliberately omitted language requiring proof in the first instance of the legality of the confinement. In those instances where confinement is illegal, the person confined is protected under the procedure followed in *Alexander, supra,* by being able to raise the issue at trial. Once a defendant asserts the illegality of his confinement as a matter of defense the question of the admissibility of the mittimus is raised.[6] Given the state of the law at the time of trial, *People v Lewis,* 294 Mich 684; 293 NW 907 (1940), the trial court's ruling was understandable. The court also stated the admission of the mittimus would deny defendant his right of confrontation. Recently the Supreme Court in *People v Kirtdoll,* 391 Mich 370; 217 NW2d 37 (1974), has overruled *Lewis,* holding that the business records rule applies to criminal as well as civil cases. In so doing, the decision made it clear that the right of confrontation was not violated where trustworthy records are admitted into evidence. 391 Mich 370, 385–390. While *Kirtdoll* dealt with hospital records under the general business entry statute, MCLA 600.2106; MSA 27A.2106, the same reasoning applies to the admissibility in evidence of court records. MCLA 600.2106; MSA 27A.2106 reads:

"A copy of any order, judgment or decree, of any court of record in this state, duly authenticated by the certificate of the judge, clerk or register of such court, under the seal thereof, shall be admissible in evidence

---

[6] In the appeal before us the prosecution contends the trial court erred in denying its motion to admit the mittimus and asks that this issue be resolved.

in any court in this state, and shall be prima facie evidence of the jurisdiction of said court over the parties to such proceedings and of all facts recited therein, and of the regularity of all proceedings prior to, and including the making of such order, judgment or decree."

Nothing in the records indicates the court record of judgment of sentence was not trustworthy and valid on its face. Accordingly, we hold that a mittimus was admissible and will be admissible in future cases.

Defendant's second claim of error related to the sentence credit of 177 days granted on the consecutive sentence of 1-1/2 years. When the sentence was imposed December 6, 1973, two conflicting opinions on the issue were extant. *People v Patterson,* 49 Mich App 269, 279; 212 NW2d 22 (1973), decided October 1973, held a smaller sentence credit might be imposed despite the fact that between the date of arraignment and the date of sentence, defendant was already serving time in prison on a prior charge. In the course of its decision the court observed:

"Finally, the practical effect of granting sentence credit to prison inmates who commit a crime while in prison will be minimal. In the exercise of their discretion, circuit court judges may impose sentences taking into consideration the sentence credit to which the defendant is entitled. We think it preferable to give effect to the remedial nature of the credit-granting statute and rely upon judicial discretion to impose sentencing rather than to deny defendant the sentence credit to which he is entitled." 49 Mich App 269, 279.

One month after *Patterson,* another panel of this Court in *People v Bachman,* 50 Mich App 682, 686; 213 NW2d 800 (1973), held time spent in prison

between arraignment and sentence cannot be given as a credit. In May 1974, the Supreme Court resolved the conflict, reversing the *Patterson* decision and sustaining *Bachman. People v Patterson,* 392 Mich 83, 90; 219 NW2d 31 (1974). In accordance with the second *Patterson* decision, the Department of Corrections is not allowing the 177-day credit on defendants' escape sentence.[7] The practical effect in the case before us is that Rufus Hurst will serve a longer sentence than the sentence imposed by the trial court.

Defendant argues that at the time of sentence, Judge Britten determined that defendant's sentence should be one year but, believing that the first *Patterson* decision permitting credit was the law, increased the sentence to 1-1/2 years and then applied the credit so as to result in a one-year confinement. Defendant then argues that the second *Patterson* decision and its administrative implementation by the Department of Corrections, results in a 1-1/2-year penalty which is 50 per cent greater than the trial court intended. In rebuttal, the people claim that the credit-granting statute is totally independent from the sentencing function, *Booker v Judge of Recorder's Court,* 7 Mich App 705; 153 NW2d 178 (1967), and therefore the trial court actually intended to impose a 1-1/2-year sentence following which, as a totally independent matter, credit was given. Under this theory, the second *Patterson* decision and its administrative implementation only result in what the trial judge intended in the first place.

---

[7] The above statement was made to this Court upon oral argument by defendant and was not contested by plaintiff. This panel subsequently has checked with the Department of Corrections and confirmed the accuracy of the statement. However, the department is giving the statutory credit allowed on a 1-1/2-year sentence, which is 4 months and 15 days.

This Court has no way of determining which of the above two theories is correct. We know the trial court unintentionally erred in granting credit but we cannot ascertain whether the effect of the error is to increase the intended sentence or confirm what was first intended. If the former conclusion is correct, remedy should be by an order of this Court reducing the sentence to one year. If the latter conclusion is correct, this Court should affirm. Certainly there is enough persuasion in defendant's claim to justify pursuing the matter further. Our failure to do so could result in a longer penalty than the trial court intended. We therefore vacate the sentence and remand the case to the trial court to determine what sentence the court actually intended and to resentence defendant accordingly, without giving credit.

Defendant's third claim of error raises the same issue discussed in *People v Snow,* 386 Mich 586; 194 NW2d 314 (1972), a similar case involving the same trial court. As in *Snow,* an affidavit accompanies defendant's brief comparing sentences of all prison escapees imposed in the six months prior and six months subsequent to defendant's sentence. Of 182 other sentences for the same crime, 181 were on guilty pleas and one by bench trial. The average sentence imposed on the guilty pleas was one year, and the sentence imposed on the single bench trial was 12 months. Based on this affidavit, defendant asserts his 1-1/2 year sentence was a penalty imposed because he dared to ask for a trial by jury. We have no way of determining the truth of defendant's claim. It may very well be that special reasons justified a longer sentence. Such a fact is inferred in the trial court's comments at the time of sentence.[8]

---

[8] "Mr. Hurst you have been in and out now for a great number of

Our resolution of issue two, remanding the cause to the trial court for resentencing, makes a decision on issue three unnecessary. Should the trial court, upon remand, determine the intended sentence was only one year, it falls in line with the average sentence found in the affidavit, and the claim of error becomes moot. If the court, upon remand, determines the intended sentence was 1-1/2 years, the error is correctible through a clear statement by the trial court explaining why the court departed from the ordinary one-year minimum sentence imposed as evidenced by the affidavit.[9]

Remanded to the trial court for resentencing in accordance with this opinion. Otherwise, defendant's conviction is affirmed.[10] This Court retains jurisdiction.

---

years and it doesn't appear that you've learned very much from it, maybe you have, I don't know. But because the method you chose to try to bring your plight to the attention of the courts or anyone else just doesn't do you any good."

[9] In a supplemental brief, defendant raises the issue of the criminal jurisdiction of the district court. This issue was recently settled adversely to defendant in *People v Milton,* 393 Mich 234; 224 NW2d 266 (1974).

[10] This does not mean that we affirm all the trial court's rulings. As we pointed out in the body of this opinion, the trial court erred in denying the prosecution's motion to admit the mittimus in light of *People v Kirtdoll, supra.* However, the error was in defendant's favor and, therefore, although we reverse the trial court on the issue of the admissibility of the mittimus, this holding does not affect the validity of defendant's conviction.